THE STATE EX REL. STECKMAN, APPELLEE, *v.* JACKSON, CHIEF, APPELLANT.

THE STATE EX REL. LARKINS, APPELLANT, *v.* KOVACIC, CHIEF, APPELLEE.

THE STATE OF OHIO, APPELLANT, *v.* AMATO, APPELLEE.

[Cite as *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420.]

(Nos. 92–2254, 93–1336 and 92–1758—Submitted
June 15, 1994—Decided September 7, 1994.)

422

*Terry K. Sherman; Jones, Day, Reavis & Pogue, John W. Zeiger* and *Matthew A. Kairis,* for appellee in case No. 92–2254.

*Ronald J. O'Brien,* City Attorney, for appellant in case No. 92–2254.

*Ronald Larkins, pro se* in case No. 93–1336.

*Sharon Sobol Jordan,* Acting Director of Law, and *Joseph J. Jerse,* Assistant Director of Law, for appellee in case No. 93–1336.

· *Steven C. LaTourette,* Lake County Prosecuting Attorney, *Ariana E. Tarighati* and *Geoffrey W. Weaver,* Assistant Prosecuting Attorneys, for appellant in case No. 92–1758.

*R. Paul LaPlante,* Lake County Public Defender, and *Charles Grieshammer,* Assistant Public Defender, for appellee in case No. 92–1758.

*Stephen T. Bolton* and *Joseph R. Young, Jr.,* urging affirmance for *amicus curiae* Vindicator Printing Company in case No. 92–1758.

*Gloria Eyerly,* Ohio Public Defender, *Dale A. Baich* and *William S. Lazarow,* Assistant Public Defenders; *Harry R. Reinhart, Gold, Rotatori, Schwartz & Gibbons Co., L.P.A.,* and *John S. Pyle; William N. Merrell,* Clark County Public Defender, and *Shawn A. Thomas,* Assistant Public Defender, urging affirmance for *amici curiae* Ohio Public Defender, Ohio Association of Criminal Defense Lawyers, and Clark County Public Defender in case No. 92–1758.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, urging reversal for *amicus curiae* Ohio Prosecuting Attorneys' Association in case No. 92–1758.

---

DOUGLAS, J.

## I

### The Issues

These three cases come to us each in a different procedural posture from the others. In case No. 92–2254, the designee of a defendant in a criminal case, *whose case has not yet been tried,* has filed an R.C. 149.43(C) *mandamus action* to obtain records that are alleged to be public. In case No. 93–1336, we have a criminal defendant who was convicted and whose conviction was affirmed on appeal seeking public records by way of an R.C. 149.43(C) *mandamus action* to be used, presumably, in *postconviction* relief proceedings. An additional wrinkle in case No. 93–1336 is that the records are to be given to a designee to be named later. In case No. 92–1758, we find a person charged with a crime, seeking by way of a *pretrial motion* in his criminal proceeding as opposed to bringing a mandamus action, records he alleges to be public.

Along with presenting to us the issue of which vehicle(s) can be used to obtain records that are alleged to be public and which involve pending criminal matters, we also have presented to us: (1) the issue of who may obtain public records; (2) the issue of the exceptions set forth in R.C. 149.43(A)(2) and (A)(4); (3) the issue of "adequate remedy at law"; (4) the issue of final appealable orders and appealability; (5) the issue of delay in the prosecution of persons charged with crime; and (6) the issue of the continued efficacy of Crim.R. 16.

Given the plethora of cases we, the courts of appeals and trial courts have decided on the issue of public records in criminal proceedings, each of the issues presented could demand extensive analytical ponderings. However, given our decision today, detailed *infra,* that is no longer necessary. By necessity, we cannot list the citation to each and every case that our decision affects even

though we recognize that would be useful. Suffice it to say that any and all cases (even though not specifically cited) that are contrary, in whole or in part, to today's decision are of no further force or effect. We emphasize again that today's decision only affects public records involved in pending criminal proceedings as that term is hereinafter construed.

## II

### The Mandamus Question—Adequate Remedy at Law

R.C. 149.43(C) provides, in pertinent part, that "if a person who has requested a copy of a public record allegedly is aggrieved by the failure of a person responsible for it to make a copy available * * *, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit or the person responsible for the public record to comply * * *."

In *State ex rel. Scanlon v. Deters, supra,* 45 Ohio St.3d 376, 544 N.E.2d 680, this court said that a person bringing a mandamus action pursuant to R.C. 149.43 must show absence of an adequate remedy at law before a writ will issue. *Scanlon* further indicated that, at least in some cases, Crim.R. 16 would be an adequate remedy.

*Scanlon* fostered such cases as *State ex rel. McGee v. Ohio State Bd. of Psychology* (1990), 49 Ohio St.3d 59, 550 N.E.2d 945, *State ex rel. Hastings Mut. Ins. Co. v. Merillat* (1990), 50 Ohio St.3d 152, 553 N.E.2d 646, *State ex rel. Shane v. New Philadelphia Police Dept., supra, State ex rel. Fant v. E. Cleveland Mun. Court Clerk* (1992), 62 Ohio St.3d 530, 584 N.E.2d 721, and *State ex rel. Hurt v. Cox* (1992), 64 Ohio St.3d 522, 597 N.E.2d 131. As each case was decided, pursuant to *Scanlon,* the problem of abandoning mandamus as the exclusive remedy to enforce R.C. 149.43 rights became exacerbated, including the anomalous result that any person (individual citizen, newspaper, designee) could get the records pertaining to a criminal charge against a defendant when that defendant could not, himself or herself, obtain the very same records by mandamus. Thus, we now decide that the clear language of the statute—that mandamus is the appropriate remedy to force compliance with the open-records statute—will be followed. As this court held in *Johnson v. United Enterprises, Inc.* (1957), 166 Ohio St. 149, 1 O.O.2d 402, 140 N.E.2d 407, a case involving injunctive relief, an injunction will not ordinarily issue if the person seeking injunctive relief has an adequate remedy at law, *except* the person seeking the injunction *need not* establish the lack of an adequate remedy where a statute specifically allows an injunction in certain circumstances. That is exactly what we have in R.C. 149.43(C). The statute provides for the use of mandamus to enforce the public

records law. That is the course that those seeking R.C. 149.43 relief should follow.

Therefore, in a pending criminal case, persons seeking to secure records alleged to be "public records," access to which has been requested and denied, must, in accordance with R.C. 149.43(C), use mandamus. No other procedure of any kind, whether by separate action, motion or otherwise, will be recognized.

Accordingly, *State ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376, 544 N.E.2d 680, and its progeny are overruled.

### III

### R.C. 149.43(A)(2); 149.43(A)(4); Crim.R. 16; "Any Person"

Having established that mandamus is the appropriate (and only) vehicle to compel the release of records alleged to be public, we now turn to the questions of what records may be obtained, who may obtain them and when they may be obtained.

### A. "Person"

R.C. 149.43(B) states, in part, that "[a]ll public records shall be promptly prepared and made available for inspection to *any person* at all reasonable times during regular business hours." (Emphasis added.) The term "person" is not defined in R.C. 149.43. Therefore, for definition, we look to R.C. 1.59, which provides:

"As used in any statute, unless another definition is provided in such statute or a related statute:

" * * *

"(C) 'Person' includes an *individual, corporation,* business trust, estate, trust, partnership, and association." (Emphasis added.)

Clearly this definition is broad and permits *anyone,* including any recognized business entity (defendants, newspapers, researchers, designees and/or nondesignees) to obtain records that are encompassed by R.C. 149.43(A). In addition, the purpose for which they are sought is not an issue. In *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 188, 610 N.E.2d 997, 998, we said, " 'Any person' means any person, regardless of purpose."

Accordingly, if the records sought are, in fact, public and not subject to any exception as to their release, then whether or not a person is acting as a designee is not an issue. Thus, in decisions that are both complete and well reasoned, the court of appeals in case No. 92–2254 was correct and the court of appeals in case No. 93–1336 was not correct as concerns the issue of a "designee."

## B. Crim.R. 16

Crim.R. 16 provides for discovery in criminal cases. Subsection (B) of the rule sets forth what evidence must be disclosed to a defendant by a prosecuting attorney. There is no need here to quote the rule, in whole or in part. Suffice it to say that the rule does *not* provide for what is often called "full," "complete" or "open file" discovery. In order to avoid the results of Crim.R. 16, some defendants (more and more we find) are resorting to the use of R.C. 149.43 to, we believe, obtain information to which they are not entitled under Crim.R. 16 *and* (and we emphasize) to bring about interminable delay in their criminal prosecutions. Death penalty cases now routinely include, at some point, an R.C. 149.43 demand. Determination of which records, if any, should be released adds up to two years to the delay in final determination of these cases. And it is not just death penalty cases. As indicated *supra*, in case No. 92–1758, we have a defendant who was indicted for kidnapping on February 8, 1991—and still to this day has not faced trial. Admittedly, in case No. 92–1758, it is the state (prosecutor) that has appealed. That fact, to us, makes little difference because had the request under R.C. 149.43 been denied by either the trial court or the court of appeals, the defendant would surely have attempted an appeal.

We recognize that there are those among us who believe that "open file" discovery should be the rule. As cited *supra*, the court of appeals in case No. 92–1758 expressed, in no uncertain terms, its feeling in this regard. In *State v. Lambert* (1994), 69 Ohio St.3d 356, 357, 632 N.E.2d 511, Justice Pfeifer of this court in his concurring opinion made clear his feeling about openness of criminal discovery when he said, "[i]t prevents meaningless, resource-wasting 'hide the thimble' games by the state in criminal matters."

Conversely, there are those among us that believe that the *only* discovery to which a criminal defendant is entitled is that provided by Crim.R. 16 and that a *pretrial* motion alleging rights under R.C. 149.43 or an action in *mandamus* pursuant to R.C. 149.43 or any other vehicle to obtain information and/or records which are not available by way of Crim.R. 16 should not be used to circumvent Crim.R. 16. Those who support this view argue that the rule is clear, that it is a rule of procedure and, therefore, that it takes precedence over any other attempted means of discovery. If further discovery is to be permitted, the argument goes, then the rule should be amended. Unless and until that happens, Crim.R. 16 should be followed to the exclusion of any attempt to bypass it.[1]

Upon full consideration, a majority of this court now feels that some of our past decisions have not served well the criminal justice system. The playing field is not level as there is no reciprocal right of prosecutors to obtain additional

---

1. We note, with interest, the more liberal discovery provisions of Juv.R. 24.

discovery beyond Crim.R. 16(C). Witness intimidation is now more real than imagined. Criminal trials are now regularly being disrupted while R.C. 149.43 procedures are pursued. It would seem that the people *also* have a right to a speedy trial—a speedy trial of an indicted defendant. Trial courts, courts of appeals and this court are consuming tremendous time and resources to review, in some cases, boxes and boxes full of records alleged to be public. Much of the information being reviewed is detrimental to the defendant, which raises yet another problem—how can a trial judge and appellate judges, who become familiar with such information, fairly judge a defendant when they have reviewed information that may not ever be admitted or even admissible as evidence? Last, but not least, are the speedy trial issues raised by defendants when it is the state appealing an order to release documents.

Accordingly, we now hold, for reasons expressed *infra*, that in the criminal proceeding itself, a defendant may use only Crim.R. 16 to obtain discovery.

### C. R.C. 149.43(A)(4)

We recognize we have decided a plethora of cases that have not all, necessarily, been consistent. Differing fact patterns, the civil versus criminal context and the timing of R.C. 149.43 requests have brought about decision-making on a case-by-case basis. This, as we have stated *supra*, has in many ways hamstrung the proper administration of justice. We have avoided "bright line" rulings only because the lines were not very bright. Today's three cases, when combined, now place in clear focus many of the problems arising from sometimes inconsistent rulings. Thus, we now believe it is time to draw some bright lines in cases which involve the use of R.C. 149.43 by *any* person seeking release of records in pending criminal proceedings.

We are cognizant of, and have reviewed, all of our cases on this subject as well as a number of court of appeals and trial court decisions. We make this point so that any interested reader can be assured that even absent citation to a particular case, we have in fact considered, in reaching our decision herein, each matter pertinent to this decision. The following listing of cases is only for purposes of illustration: *State ex rel. Beacon Journal Publishing Co. v. Kent State Univ.* (1993), 68 Ohio St.3d 40, 623 N.E.2d 51 (confidential law enforcement investigatory records); *State ex rel. Carpenter v. Tubbs Jones* (1994), 68 Ohio St.3d 181, 624 N.E.2d 1048 (designee failed to appear); *State ex rel. Morales v. Cleveland* (1993), 67 Ohio St.3d 573, 621 N.E.2d 403 (trial preparation documents—postconviction); *State ex rel. Lawhorn v. White* (1993), 67 Ohio St.3d 158, 616 N.E.2d 888; *State ex rel. Hamblin v. Brooklyn* (1993), 67 Ohio St.3d 152, 616 N.E.2d 883 (trial preparation records and work product—postconviction); *State ex rel. Vindicator Printing Co. v. Watkins* (1993), 66 Ohio St.3d 129, 609 N.E.2d 551 (trial preparation and confidential law enforcement investigatory records); *State ex rel.*

*Johnson v. Cleveland* (1992), 65 Ohio St.3d 331, 603 N.E.2d 1011 (trial preparation, investigatory work product, risk to witnesses and state/federal law exemptions); *State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 597 N.E.2d 147 (trial preparation and confidential law enforcement investigatory exemptions—postconviction); *State ex rel. Clark v. Toledo* (1992), 62 Ohio St.3d 452, 584 N.E.2d 662 ("*Clark II*") (postconviction relief); *State ex rel. Coleman v. Cincinnati* (1991), 57 Ohio St.3d 83, 566 N.E.2d 151 (trial preparation records—police department's homicide investigation files); *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1991), 57 Ohio St.3d 77, 566 N.E.2d 146 (investigatory and trial preparation records); *State ex rel. Zuern v. Leis* (1990), 56 Ohio St.3d 20, 564 N.E.2d 81 (trial preparation records); *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313 ("*Clark I*") (postconviction relief); *State ex rel. Multimedia, Inc. v. Whalen* (1990), 48 Ohio St.3d 41, 549 N.E.2d 167 (confidential law enforcement investigatory records); *State ex rel. Outlet Communications, Inc. v. Lancaster Police Dept.* (1988), 38 Ohio St.3d 324, 528 N.E.2d 175 (arrest and intoxilyzer records—confidential law enforcement investigatory records; Furtherance of Justice Fund records); *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786 ("*NBC I*") (investigatory work product exception); and *State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron* (1980), 64 Ohio St.2d 392, 18 O.O.3d 534, 415 N.E.2d 310 ("routine incident reports").

Any objective review of these cases leads to the conclusion that we construed the last cited case too liberally—the 1980 *Beacon Journal* case. That case involved records compiled by the University of Akron's Security Department concerning the alleged rape of a university student, the death of the student and circumstances surrounding the death. The Beacon Journal requested permission to inspect the police reports and the university refused to produce the records. The Beacon Journal brought a mandamus action. The records had been compiled in 1978. R.C. 149.43 was amended in 1980. 138 Ohio Laws, Part I, 245. Pursuant to the amended statute, the court of appeals granted the writ and ordered the university to permit inspection and copying of the two reports. The university appealed to this court.

In the syllabus of *Beacon Journal,* we held: "Law enforcement records compiled before the amendment of R.C. 149.43 are available to the public provided they are public records as defined by R.C. 149.43 *and are not exempted from disclosure by its provisions.*" (Emphasis added.) While there is considerable discussion in the case concerning the then-new amendments to R.C. 149.43, the narrow holding of the case, as set forth in the syllabus, involves *only* the retroactive vs. prospective effect of the amendments. In addition, while this court held the records in question should be released, we described those records by saying that "[t]he materials sought by Beacon Journal can only be character-

ized as routine factual reports. The university's police were simply fulfilling the duty imposed upon all law enforcement agencies to generate ongoing offense reports, chronicling factual events reported to them." (Footnotes omitted.) *Id.*, 64 Ohio St.2d at 397, 18 O.O.3d at 537–538, 415 N.E.2d at 314. In the last paragraph of the opinion, we said: "For the foregoing reasons, we conclude that the allowance of access *to these routine incident reports* by the Court of Appeals was proper, and its judgment is hereby affirmed." (Emphasis added.) *Id.* at 398, 18 O.O.3d at 538, 415 N.E.2d at 315.

From this narrow beginning, we, in *NBC I, supra*, 38 Ohio St.3d 79, 526 N.E.2d 786, made a quantum leap (citing *Beacon Journal*) and in the third paragraph of the syllabus held that "[t]he specific investigatory work product exception, R.C. 149.43(A)(2)(c), protects an investigator's deliberative and subjective analysis, his interpretation of the facts, his theory of the case, and his investigative plans. The exception does not encompass the objective facts and observations he has recorded." *NBC I* was followed by one case after another (see listing *supra*) usually citing *NBC I*, which, upon reflection, improperly consolidated and confused *two separate* exceptions found in R.C. 149.43(A)(2)(c). The word "or" in the section should not be ignored.

Following this trend, we then decided *Clark I, supra*, 54 Ohio St.3d 55, 560 N.E.2d 1313, a case involving postconviction relief. Even though *NBC I* had nothing to do with a postconviction petition, nevertheless *NBC I* was cited in *Clark I* for the proposition that R.C. 149.43 had increased substantially the right of citizens to governmental information. *Clark I* was then used as authority in various cases for various propositions and in two of the cases now before us, case Nos. 92–2254 and 92–1758, the parties cite *Clark I*, even though neither case involves postconviction relief.

Relying upon these cases, courts (and the persons and agencies involved with producing and keeping such records) are regularly faced with demands to release the entire contents of a prosecutor's file *and* all the records accumulated and maintained by a police department in connection with a particular defendant and his or her criminal proceeding. Because of our cases, the exceptions to required disclosure found in R.C. 149.43(A)(2)(c)—"specific investigatory work product"— and R.C. 149.43(A)(4)—"trial preparation record"—have virtually been rendered meaningless. Additionally, these cases have, for all practical purposes, just about written Rule 16 out of the Criminal Rules. Simply put, this chaos cannot be permitted to continue.

R.C. 149.43(A)(4) reads: " 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." It is difficult to

conceive of anything in a prosecutor's file, in a pending criminal matter, that would not be either material compiled in anticipation of a specific criminal proceeding or the personal trial preparation of the prosecutor.

Therefore, we now hold that information, not subject to discovery pursuant to Crim.R. 16(B), contained in the file of a prosecutor who is prosecuting a criminal matter, is not subject to release as a public record pursuant to R.C. 149.43 and is specifically exempt from release as a trial preparation record in accordance with R.C. 149.43(A)(4).

By its very terms, R.C. 149.43(A)(4) defines "trial preparation record" as a record "compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding * * *." Thus, to determine how long records exempt under R.C. 149.43(A)(4) remain exempt, we must look to the definitions of the words "trial," "action" and "proceeding."

"Trial" is defined as "[a] judicial examination and determination of issues between parties to [an] action, whether they be issues of law or of fact, before a court that has jurisdiction." Black's Law Dictionary (6 Ed.Rev.1990) 1504. For "action" the definition "includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court." *Id.* at 28. "Proceeding" is the "[r]egular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment." *Id.* at 1204.

None of these definitions, including the definition of "trial," makes any distinction between an initial court proceeding, direct appeals and/or postconviction relief. Accordingly, we also hold that once a record becomes exempt from release as a "trial preparation record," that record does not lose its exempt status unless and until all "trials," "actions" and/or "proceedings" have been fully completed.

This holding may seem harsh but it is not without good reason. Putting aside the argument that R.C. 149.43 is procedural in nature and, therefore, is subordinate to Crim.R. 16 by operation of Section 5(B), Article IV of the Ohio Constitution (an argument that may very well have merit), we still are faced with the situation in which a defendant in a criminal case might be granted a new trial, on his or her petition for postconviction relief. Since the possibility of retrial remains, the defendant, who has obtained records during postconviction proceedings, would have on retrial more information than she or he would be entitled to possess if limited to discovery pursuant to Crim.R. 16. This, of course, could present (at best) an anomalous result.

### D. R.C. 149.43(A)(2)(c)

R.C. 149.43(A)(2)(c) states:

"(A) As used in this section:

" * * *

"(2) 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

" * * *

"(c) Specific confidential investigatory techniques or procedures *or* specific investigatory work product[.]"   (Emphasis added.)

The emphasized word "or" clearly separates the phrase following the word from the phrase which precedes it.   We have not discussed in our previous cases, at least with any specificity, that obvious distinction.

In *State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron,* 64 Ohio St.2d 392, 18 O.O.3d 534, 415 N.E.2d 310, discussed extensively *supra,* this court purported to discuss the specific investigatory *work product* exemption found in R.C. 149.43(A)(2)(c).   However, in describing how the exemption did not apply, the court, at 397, 18 O.O.3d at 537–538, 415 N.E.2d at 314, fn. 6, described what the two reports in question did not contain and concluded the reports should be released on the basis that they were only routine factual reports.   Footnote 6 does *not* cover the specific "work product" exemption found in R.C. 149.-43(A)(2)(c).   While there is more than one exemption found in that subsection, only the first exemption is discussed.   Thus, the court said:

"The Court of Appeals in the instant cause aptly described the reports as follows:

" * * *

" 'There are no confidential *investigatory techniques* apparent.   On the contrary, the reports here in question reflect nothing more than routine *investigatory procedures.*' "   (Emphasis added.)   *Id.*

Accordingly, the last-phrased exemption in R.C. 149.43(A)(2)(c)—work product—was not specifically considered in that case.

Nevertheless, on this nonexistent foundation, we decided *NBC I, supra,* 38 Ohio St.3d 79, 526 N.E.2d 786.   We said that "[t]he city suggests that 'specific investigatory work product' means any record which was ' * * * generated by the Police and Safety Department investigators assigned to investigate a particular incident * * * .'   A similar definition was considered and rejected by this court in *Beacon Journal, supra.*"   *Id.* at 83, 526 N.E.2d at 790.   We went on to say that

"[t]he specific investigatory work product exception, R.C. 149.43(A)(2)(c), protects an investigator's deliberative and subjective analysis, his interpretation of the facts, his theory of the case, and his investigative plans. The exception does not encompass the objective facts and observations he has recorded. The content of the record, not the fact that it was created during the investigation of a specific crime, determines whether material may be withheld as a 'specific investigatory work product' exception.

"Specific investigatory work product can best be defined as material that demonstrably contains or reveals the theories, mental impressions, and thought processes of the investigator." *NBC I* at 84, 526 N.E.2d at 790.

We said all of the foregoing in *NBC I* without citation to *any* authority except *Beacon Journal*. As we have seen, *Beacon Journal* did not deal with the specific work product exception and our subsequent reliance on *Beacon Journal* as authority for the work product exception was misplaced.

Given the foregoing, it becomes necessary to determine the question: "What is work product?" R.C. 149.43 does not define the term. The Rules of Criminal Procedure do not define the term. What then is the origin of the term?

The term "work product" emanates from the decision of the United States Supreme Court in *Hickman v. Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. The term has, most generally, arisen in the context of the relationship of attorney-client. The court indicated that proper preparation of a client's case requires that information be gathered, assembled and sorted and that theories of the case be prepared and strategy be planned "without undue and needless interference." *Id.* at 511, 67 S.Ct. at 393, 91 L.Ed. at 462. If the product of such work is to be available merely upon demand, then there is a very real probability that certain information will remain unrecorded, witnesses' names will not be catalogued and other memoranda will be absent from the "official" files. We should not, by our rulings, create a situation where there is an incentive to engage in such conduct.

We are now faced with the problem of the "work product" concept being transferred, by the General Assembly, from its attorney-client genesis to the area of confidential law enforcement investigatory records. Given this task, with regard to records assembled by law enforcement officials (including prosecutors), we now subscribe to Black's definition of "work product rule." "Under this rule any notes, working papers, memoranda or similar materials, prepared by attorneys [here, by law enforcement officials] in anticipation of litigation, are protected from discovery." Black's Law Dictionary (6 Ed.Rev.1990) 1606. This definition (working papers) is broad enough to bring under its umbrella any records compiled by law enforcement officials.

Accordingly, we further find that except as required by Crim.R. 16, information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.-43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation. The work product exception does not include ongoing routine offense and incident reports, including, but not limited to, records relating to a charge of driving while under the influence and records containing the results of intoxilyzer tests. Routine offense and incident reports are subject to immediate release upon request. If release is refused, an action in mandamus, pursuant to R.C. 149.43(C), will lie to secure release of the records.

### E. Crim.R. 16(B)(1)(c) and (B)(2)

Given our sweeping rulings in this case, we find it necessary to comment on Crim.R. 16(B)(1)(c) and (B)(2).

Crim.R. 16(B)(1)(c) provides:

"Disclosure of Evidence by the Prosecuting Attorney.

"(1) Information Subject to Disclosure.

" * * *

"(c) Documents and Tangible Objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, *available to* or within the possession, custody or control of *the state*, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant." (Emphasis added.)

This rule, on its face, appears to permit broad discovery by a defendant in a criminal case. The rule, by use of the "available to" language, would seem to negate the requirement of some courts that a defendant, who is seeking records held by police officials, make demand on the law enforcement agency. Obviously, records, held by police officials, which are connected to a particular investigation of criminal activity are records "available to * * * the state." Thus, a demand made pursuant to Crim.R. 16(B)(1)(c), directed to the prosecuting attorney, should be sufficient to obtain police investigatory records to which a defendant is otherwise entitled.

We also recognize that the qualifying words of the rule, "and which are material to the preparation of his defense," are used by some prosecuting attorneys to defeat rule-authorized discovery by a defendant. Having now barred defendants (and all others) from obtaining prosecutor and police records during pending criminal proceedings, we also believe that we should make clear

our concern that there be strong enforcement of Crim.R. 16(B)(1)(c) by trial courts in order to effectuate the purposes of the rule and, thereby, serve the ends of justice, judicial economy and the avoidance of surprise. As an example, in the civil context, see the mandatory disclosure provisions of Fed.R.Civ.P. 26(a), effective December 1, 1993.

We are aware of Crim.R. 16(B)(2), which, on its face, appears to be in some conflict with Crim.R. 16(B)(1)(c). Crim.R. 16(B)(2) provides:

"Disclosure of Evidence by the Prosecuting Attorney.

" * * *

"(2) Information Not Subject to Disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents."

We believe that Crim.R. 16(B)(2) should also be construed so as to effectuate the presumption in favor of discovery.

On the subject of Crim.R. 16, we note, in passing, that the Report of the Supreme Court Task Force to Study Court Costs and Indigent Defense (Sept. 1, 1992) 14, said that:

## "THE RULES OF CRIMINAL PROCEDURE SHOULD BE AMENDED TO FACILITATE DISCOVERY BY CRIMINAL DEFENDANTS.

"Rule 16 of the Ohio Rules of Criminal Procedure provides for discovery in criminal cases. This rule is applied inconsistently throughout the state, resulting in greater costs to the criminal justice system in areas where discoverable material is not readily made available.

"The Rules Advisory Committee of the Supreme Court should consider amending Criminal Rule 16. A more open and uniform discovery process would reduce the need for court intervention in the discovery process, facilitate settlement of cases, and result in better case preparation, all of which would reduce the cost of providing representation to indigent defendants."

In this regard we are aware, and call to the attention of those interested, that the Rules Advisory Committee of the Supreme Court currently has under active consideration the subject of Crim.R. 16 revision.

## IV

### Disposition—Case No. 92–2254

In this case, the proper procedural form—mandamus—was used to seek release of records pursuant to rights accorded in R.C. 149.43. The person

seeking the records, appellee, is unquestionably a stand-in for defendant Jones. Whether appellee is a designee or not is not dispositive. R.C. 149.43(B) provides that all *public* records are to be made available "to any person." This obviously includes appellee and the court of appeals, in so ruling, was correct.

The court of appeals was also correct, under then-existing case law, in granting a writ to appellee in appellee's quest to obtain records from the Columbus Police Department. However, having held today that records compiled by a law enforcement agency as part of a probable or pending criminal proceeding are now excepted from release under the work product exception set forth in R.C. 149.43(A)(2)(c), we reverse the court of appeals, vacate its judgment and dismiss the cause.

## V

### Disposition—Case No. 93–1336

In this case, we have an appellant, convicted of murder, seeking postconviction relief. Appellant sought, from the Cleveland Chief of Police, police records dealing with the crimes for which he was convicted. Appellant used the proper procedural vehicle—mandamus—in seeking an order from the court of appeals which would require the police chief to turn over records to a person to be designated by appellant to receive the records. Among other things, the court of appeals held that appellant had no right, under the statute, to designate a stand-in to receive the records. The court of appeals dismissed appellant's petition.

In this regard, for reasons stated *supra,* the court of appeals erred. However, the court of appeals, in its ultimate judgment of dismissal, was correct, based upon the holding of today's decision rather than for the reasons stated in its opinion. The records sought by appellant are exempt from disclosure based upon the work product exception of R.C. 149.43(A)(2)(c). Accordingly, we hold that a defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief. Having so found, *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313, and its progeny are overruled.

On this basis, the judgment of the court of appeals is affirmed.

## VI

### Disposition—Case No. 92–1758

In this case, the appellee filed a *pretrial motion,* in his underlying criminal proceeding, for release of public records. Appellee indicated that his motion was

made pursuant to R.C. 149.43 and he sought all public records relating to the charges against him. The trial court ordered release of records and the court of appeals affirmed, ruling that any defendant in a criminal case could, by pretrial motion, use R.C. 149.43 in a *pending* criminal case to obtain information that the defendant would not otherwise be entitled to pursuant to Crim.R. 16.

Rulings by a trial court on demands for discovery (whether granting *or* denying the demand) are not orders which are final and appealable. See *State v. Lambert, supra,* 69 Ohio St.3d 356, 632 N.E.2d 511, and *Horton v. Addy* (1994), 69 Ohio St.3d 181, 631 N.E.2d 123.

Discovery orders have long been considered interlocutory. In *Klein v. Bendix–Westinghouse Co.* (1968), 13 Ohio St.2d 85, 86, 42 O.O.2d 283, 284, 234 N.E.2d 587, 589, this court stated: "The sole question for determination is whether a discovery order of a trial court is subject to immediate appellate review. We hold that it is *not.*" (Emphasis added.) In *Kennedy v. Chalfin* (1974), 38 Ohio St.2d 85, 89, 67 O.O.2d 90, 92, 310 N.E.2d 233, 235, we stated: "discovery techniques are pretrial procedures used as an adjunct to be [*sic*] a pending lawsuit. They are designed to aid in the final disposition of the litigation, and are, therefore, to be considered as an integral part of the action in which they are utilized. They are not 'special proceedings,' as that phrase is used in R.C. 2505.02." See, also, *In re Coastal States Petroleum* (1972), 32 Ohio St.2d 81, 61 O.O.2d 333, 290 N.E.2d 844; *Collins v. Yellow Cab Co.* (1952), 157 Ohio St. 311, 47 O.O. 186, 105 N.E.2d 395; and *State v. Smith* (1939), 135 Ohio St. 292, 14 O.O. 149, 20 N.E.2d 718.

We deviated from this well-established and workable rule in *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877, and *State v. Port Clinton Fisheries, Inc.* (1984), 12 Ohio St.3d 114, 12 OBR 157, 465 N.E.2d 865. This deviation has caused this court and courts of appeals (including the court of appeals in this case—No. 92–1758) much difficulty. By overruling *Amato v. Gen. Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452, in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213, we implicitly overruled *Humphry* and *Port Clinton Fisheries.* We now do so explicitly.

Accordingly, we hold that discovery orders are interlocutory and, as such, are neither final nor appealable.

An exception to this rule is the *state's* right to appeal "by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial

court in a criminal case * * *." R.C. 2945.67. A thorough review of the record indicates that appellant in this case substantially complied with the dictates of *State v. Wallace* (1975), 43 Ohio St.2d 1, 72 O.O.2d 1, 330 N.E.2d 697, and App.R. 5(A) in obtaining from the court of appeals leave to appeal to that court.[2] Thus, the case was properly before the court of appeals and is properly before us.

The larger issue though is whether the procedure used by appellee (a pretrial motion in a pending criminal proceeding) was proper. Once again, we recognize that the trial court and the court of appeals were bound by our past decisions. However, since we now hold that mandamus is the proper and only procedure to be used in enforcing alleged R.C. 149.43 rights, the judgments of the court of appeals and the trial court are reversed and vacated and the trial court is instructed to deny appellee's motion. Should appellee then choose to file a mandamus complaint that, of course, would be subject to being denied (dismissed) on the basis that the records sought are excepted from release pursuant to the work product exception in R.C. 149.43(A)(2)(c). Maybe now the people's right to have this defendant face the charges pending against him will be realized.

## VII

### Conclusion

Today we have taken strong action to correct an ever-increasing problem. Some of us have reached this conclusion with great reluctance. Others of us have done so without reluctance, saying: "It is about time." We recognize that our decision will not be met with universal approval but those who would criticize do not see the daily bombardment on our criminal justice system that we see. The time has come to say that we have gone too far in some of our past decisions and it is now time to return to a level playing field between accusers and accuseds.

We shy not away from controversy when controversy is inevitable in the shaping of the law. We do not seek controversy but, like a homing pigeon, it finds its way to our door.

In this regard, we identify with John Milton (1608–1674), an English poet, when he wrote:

"There is no learned man but will confess he hath much profited by reading controversies; his senses awakened, his judgment sharpened, and the truth which he holds more firmly established. In logic they teach that contraries laid together more evidently appear; and controversy being permitted, falsehood will

---

2. The same procedure could have been followed in *Port Clinton Fisheries*.

appear more false, and truth more true." International Dictionary of Thoughts (1969) 167.

*Judgment reversed*
*and cause dismissed*
*in case No. 92–2254.*

*Judgment affirmed*
*in case No. 93–1336.*

*Judgment reversed*
*and cause dismissed*
*in case No. 92–1758.*

MOYER, C.J., RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., concurs separately.

A.W. SWEENEY and WRIGHT, JJ., dissent.

PFEIFER, J., concurring. I join in the majority's well-reasoned interpretation of R.C. 149.43 and Crim.R. 16 as they currently read. I also agree that Crim.R. 16 should be amended.

Without further delay, we should integrate relevant portions of Loc.R. 3.03 I(D)(2)(d) of the Montgomery County Court of Common Pleas Criminal Rules of Practice and Procedure into Crim.R. 16. The local rule provides:

"(d) An information packet shall be delivered to the defendant's counsel upon execution of a Demand and Receipt for the information packet. The information packet shall contain:

"(i) All police reports including the defendant's prior criminal record;

"(ii) All witness statements;

"(iii) Any statements made by the defendants and/or by the co-defendant(s);

"(iv) All reports of examinations and tests that are made in connection with the particular case and are available to or within the possession, custody, or control of the state;

"(v) The names and addresses of all witnesses; and

"(vi) All documents and tangible objects which are available to or within the possession, custody, or control of the state, and which are material to the preparation of the defendant's defense, or are intended for use by the prosecuting attorney as evidence at trial, or were obtained from or belong to the defendant.

"(e) No police reports supplied in the information packet shall be used for cross-examination of any witness unless it is properly qualified under Rule

16(B)(1)(g) of the Ohio Rules of Criminal Procedure and Rule 613 of the Ohio Rules of Evidence.

"(f) The execution of a demand and receipt for an information packet and the acceptance of an information packet by counsel for the defendant automatically obligates the defendant to provide reciprocal discovery as set forth in Section (I)(D)(2)(d) of this local rule and as required by Rule 16 Ohio Rules of Criminal Procedure."

This rule and its predecessors have functioned well for many years in one of Ohio's most populous counties and should be applied statewide.

WRIGHT, J., dissenting. I respectfully dissent. I think we have taken a substantial step back from *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, and its progeny. Further, I feel *State ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376, 544 N.E.2d 680, and *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313, were just decisions and most certainly not to be rejected by this court.

A.W. SWEENEY, J., concurs in the foregoing dissenting opinion.