DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas which determined whether certain information released by appellees, the city of Toledo, the city of Toledo Police Department, and Michael Navarre, Police Chief ("City"), was not exempt from disclosure under the Ohio Public Records Act, R.C. Chapter 149.43. Appellants, Toledo Police Patrolman's Association Local 10, IUPA, AFL-CIO-CLC, and D. Michael Collins ("TPPA"), assert the following assignment of error:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RELEASING DOCUMENTS EXEMPT FROM PUBLIC DISSEMINATION ACCORDING TO R.C. 149.43(A)(2)(C) [sic]."
Intervenor-appellee, Sylvester Rome, filed a brief joining in the City's arguments.
The following facts are derived from the affidavit of Police Chief Navarre. On February 27, 1999, an on-duty Toledo police officer shot and killed James Rome, who was driving a stolen vehicle. Two investigations of the shooting followed. The Internal Affairs Division of the Toledo Police Department conducted the first investigation in order to determine whether criminal charges should be brought against the officer. That investigation resulted in a finding that no crime was committed. The Firearms Review Board ("Board") conducted the second investigation. With only a few exceptions, this Board convenes each time a police officer discharges his firearm, whether on-duty or off-duty. The Board decides whether the discharge was justified, accidental or unjustified. A finding of accidental discharge requires minor discipline and/or a recommendation of additional training. Upon a determination that the discharge is unjustified, the Board must refer the matter to the Internal Affairs Division for further investigation and possible disciplinary action. However, if the Board decides that the discharge was justified, then no further administrative action is taken.
In March 1999, the Board convened to review the shooting of Mr. Rome. Materials from the criminal investigation, additional documents, and testimony were presented in the tape recorded hearing. After the hearing, the Board unanimously determined that the shooting was justified.
Subsequently, the family of Mr. Rome and the National Association for the Advancement of Colored People ("NAACP") requested copies of all "records in the file of" the Board. After receiving advice from the city of Toledo Law Department concerning the Ohio Public Records Act, the City decided to provide copies of the records to the Rome family and the NAACP. Those portions of the Board's file related to the criminal investigation were redacted "to the extent that they create a high probability of disclosure within any of the" four exemptions set forth in R.C.149.43(A)(2). As a result of the City's decision, TPPA filed the instant action seeking declaratory and injunctive relief.
The parties stipulated as to two sets of documents denominated "Exhibit A" and "Exhibit B," which represented the Board's entire record. Exhibit A is the unredacted version of the Board's record with four exceptions. The four exceptions comprise Exhibit B. These are (1) Police Captain Derrick Digg's assessment of the incident; (2) Lieutenant Charles Hunt's supplemental crime report; (3) the coroner's report; and (4) the coroner's receipt for blood and property. Upon a review of the disputed records, the trial court determined that Exhibit B consisted of confidential law enforcement investigatory records and that the coroner's report and the coroner's receipt for blood and property were, therefore, exempt, in toto, from public dissemination under R.C. 149.43(A(2)(c). The court also found that the final two paragraphs of Captain Diggs' report were exempt and that the "Discussion" and "Conclusion" portions of Lieutenant Hunt's Supplemental Crime Report were exempt. As to Exhibit A, the court held that while the exhibit was a confidential law enforcement investigatory record, the release of the record would not create a high probability of the disclosure of any of the four exemptions listed in R.C. 149.43(A)(2).
In considering the issues in this case, we found that the use of Exhibit A and Exhibit B to denominate the records reviewed by the Board was confusing. Therefore, for our purposes we have reorganized the two exhibits. Records (1) through (11) are documents generated solely in the course of the Board proceeding. Records (A) through (LL) were also reviewed by the Board in reaching its decision but were created during the internal affairs investigation of the shooting. Keeping these distinctions in mind, we shall first discuss the law applicable to this case.
A "public record" is "any record that is kept by any public office, including, but not limited to a city, except for,inter alia, confidential law enforcement investigatory records. R.C. 149.43(A)(1)(h). A "confidential law enforcement investigatory record" is "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature." However, the record must meet one of four criteria indicating that the release of the record would create a high probability of disclosure of certain information before it is considered exempt from release under R.C. 149.43. See R.C.149.43(A)(2). The exemption, or rather two exemptions, involved in this case are found in R.C. 149.43(A)(2)(c), which excludes confidential law enforcement investigatory records from release due to the high probability of disclosure of "specific confidential investigatory techniques or procedures or specific investigatory work product."
When faced with the issue presented in this case, a court must engage in a two-step process. State ex rel.Multimedia, Inc. v. Snowden (1995), 72 Ohio St.3d 141, 142; Stateex rel. Nat'l. Broadcasting Co. v. Cleveland (1991), 57 Ohio St.3d 77,79 ("NBC II"). First, the court must determine whether the disputed record is a confidential law enforcement investigatory record. If it is such a record, the court is required to ascertain whether the release of the record would create the high probability of disclosure of, as applicable to this case, information found in R.C. 143.49(A)(2)(c). State ex rel.Multimedia, Inc. v. Snowden, 72 Ohio St.3d at 142; NBC II, at 79. This analysis necessarily imposes upon a court the duty to make anin camera individualized scrutiny of the records in question.State ex rel. Nat'l. Broadcasting Co., Inc. v. Cleveland (1988),38 Ohio St.3d 79, paragraph four of the syllabus ("NBC I"). See, also, State ex rel. Clark v. Toledo
(1992), 62 Ohio St.3d 452, 453.
In the present case, the trial court was presented with a "mixed bag" of records. Some of these records were compiled in the internal affairs criminal investigation and are clearly confidential law enforcement investigatory records. See NBC I
(Records of an internal affairs department investigation into incidents where police officers used deadly force are confidential law enforcement investigatory records). The trial court determined that some of these types of records, as found in Exhibit B, were exempt under R.C. 149.43(A)(2)(c). See, e.g.,State, ex rel. Dayton Newspapers, Inc., v. Rauch (1984), 12 Ohio St.3d 100
(coroner's autopsy reports are investigatory report exempt under work product exemption). The court further held that all of the remaining records were also confidential law enforcement investigatory records. TPPA contends that these latter records contain information exempt from disclosure. The City asserts, that as an internal investigation held for the purpose of determining discipline, the records compiled are not confidential law enforcement investigatory records and are, therefore, subject to disclosure.
Generally, records of a law enforcement matter of an administrative nature must relate "directly to the enforcement of law and not to employment or personnel matters ancillary to law enforcement matters" in order to be considered confidential law enforcement investigatory records. State ex rel. FreedomCommunications, Inc. v. Elida Community Fire Co. (1998), 82 Ohio St.3d 578,581; State ex rel. Multimedia v. Snowsden,72 Ohio St. 3d at 143. Accordingly, absent a criminal proceeding, internal investigative reports concerning the regulation and discipline of police officers in the performance of their duties are not confidential investigatory law enforcement records. State ex rel.Police Officers for Equal Rights v. Lashutka (1995), 72 Ohio St.3d 185,186; NBC I at 83; Cleveland Police Patrolman's Assoc. v.Cleveland (1996), 110 Ohio App.3d 796, 799-800.
Because the Board's review related to a disciplinary or ancillary matter and was not directly related to a law enforcement matter as part of a pending or highly probable criminal action, the Board's Record Nos. (1) through (11) do not satisfy the first step of the analysis. That is, they are not confidential law enforcement investigatory records. Thus, the records engendered during the investigation by the Board cannot be subjected to any of the four exceptions found in R.C. 149.43(A)(2).
TPPA argues, however, that criminal action was highly probable in this case from the vantage point of the outset of the Board's investigation. We disagree with this perspective. The only evidence in the record of this case, other than exhibits, is the affidavit of Police Chief Navarre. That evidence demonstrates that the Board convened, as it does in almost every case where a police officer discharges a firearm, to determine whether disciplinary measures were required in this particular case. Despite the inclusion of documents from the criminal investigation in the Board review, there is no evidence that criminal action against the officer is either pending or highly probable.
We must therefore conclude that all of the documents generated by the Board itself are not confidential law enforcement investigatory records and are subject to disclosure. We have individually scrutinized these documents and identify them as follows:
 (1) The entire report of Deputy Chief Linda Mason to Chief Michael Navarre.
(2) The press release of March 23, 1999.
 (3) The FAX dated 3-18-99 to Mason listing the officers involved in the shooting and the witnesses before the Board.
 (4), (5), and (6) Notice to Terry Schroeder, D. Michael Collins and Deputy Chief Nate Ford of the Board Hearing.
 (7) and (8) A cover letter authored by Police Chief Navarre and a request by the Rome family's attorney to be present at the Board hearing.
 (9) Handwritten, almost illegible notes made during the hearing.
 (10) Notices to the officers involved in the shooting of the hearing.
 (11) Handwritten messages regarding various witnesses and their ability to testify at the hearing.
We now turn to the remainder of the documents which were, admittedly, part of the internal affairs criminal investigation. TPPA contends that these records concern specific investigatory techniques and procedures and are scientific in nature and/or are specific investigatory work product. Therefore, TPPA claims that these records, or portions thereof, are exempt from disclosure under R.C. 149.43(A)(2)(c).
Initially, we conclude that the trial court properly decided that the files from the internal affairs criminal investigation of the shooting of James Rome are confidential law enforcement investigatory records. See NBC II at 79-80. The question here is whether, in light of recent case law, these records are exempt from disclosure.
The Ohio Supreme Court has extensively considered the law as it relates to the "work product" exemption found in R.C.149.43(A)(2)(c). In State ex rel. Steckman v. Jackson (1994),70 Ohio St.3d 420, the Ohio Supreme Court defined "specific investigatory work product" as "`material that demonstrably contains or reveals the theories, mental impressions and thought processes of the investigator.'" Id. at 434, quoting NBC I at 84. Investigatory work product is an investigator's deliberative and subjective analysis and does not encompass objective facts or recorded observations. Id. Thus, the work product exemption does not include routine offense and incident reports. Id. at 435. The Steckman Court went on to hold that the work product exemption is applicable only to information assembled by law enforcement officials in connection with a highly probable or pending criminal proceeding. Id. Once it is determined that criminal proceedings are not highly probable or if the criminal action ends, then the holder of the records cannot claim that they are exempt as work product under R.C. 149.43(A)(2)(c). See Stateex rel. Cleveland Patrolmen's Assoc. v. Cleveland (1999), 84 Ohio St.3d 310.
Here, it is undisputed that criminal proceedings are neither pending nor highly probable as a result of the internal affairs investigation into the shooting of James Rome. Accordingly, TPPA cannot avail itself of the work product exemption in order to bar the City's release of the documents in the criminal investigation file.
Nevertheless, TPPA also argues that the records in this case contain specific confidential investigatory techniques or procedures and, as a result, are exempt. We disagree. As stated previously, a high probability of disclosure of "specific investigatory techniques or procedures" must exist. Most of the documents cited by TPPA are actually work product, that is, they are the investigator's subjective and deliberative analysis after employing scientific techniques, but they do not contain any specific investigatory techniques themselves. As such, all of this information is subject to disclosure. The remainder of the documents are incident reports and the like, which are not exempt under R.C. 149.43(A)(2)(c). See Steckman, supra.
Based on the foregoing, we must conclude that virtually every document, including those excepted and/or redacted by the trial court, in the criminal investigation file should have been provided to the Rome family and the NAACP. We realize that it could be argued that neither the City nor intervenor Rome raised any error in regard to these records on appeal and that, therefore, the trial court's decision on these records must stand. We cannot accede to this argument. To repeat, it is a court's duty to scrutinize each record individually and determine whether an exemption exists. Thus, while that duty almost always arises by means of a mandamus action, see Id. at 426-427, the fact that the issue is presented in a different context to this court on this particular occasion does not lessen that duty. Thus, adhering to the principle that R.C. 149.43 must be liberally construed in favor of broad access, with any doubt resolved in favor of disclosure of public records, see State ex rel. Wadd v. Cleveland
(1998), 81 Ohio St.3d 50, 51-52, we enumerate the following records as subject to disclosure:
 (A) The report of Captain Derrick Diggs to Deputy Chief Nathanael Ford-contains work product, but is subject to disclosure because no pending or highly probable criminal action exists.
 (B) Toledo Police Division Use of Firearms Report-incident report.
 (C) Toledo Police Department Supplemental Crime Report (name of officer reporting is unreadable, but presumably, this is the report of Lieutenant Charles Hunt)-contains observable facts, witness interviews, work product that is subject to disclosure because no pending or highly probable criminal action exists.
 (D) through (AA)-Toledo Police Department Supplemental Crime Reports-incident reports made by all police officers involved in the incident and includes witness interviews.
 (BB) Evidence Technician Report of Sergeant Keefe Snyder concerning the scene of the shooting-contains no specific investigatory techniques or procedures and is essentially work product. Because no criminal action is pending or highly probable, the work product exemption is inapplicable.
 (CC) Evidence Technician Report of Detective William Goetz concerning items found in stolen car and fingerprints-contains observable facts. In addition, while report names techniques used for fingerprinting, it does not contain the specific procedure and simply reports the result of the testing and is, accordingly, work product. Because no criminal action is pending or highly probable, the work product exemption is inapplicable.
 (DD) and (EE) Property receipts for crime scene evidence-routine reports that do not present a high probability of the disclosure of any of the information listed in R.C. 149.43(A)(2).
 (FF) Evidence Technician Report of Detective William Goetz describing the scene of the shooting, the evidence gathered and the autopsy results-contains observable facts and actions taken, but does not contain any specific investigatory techniques or procedures and is essentially work product. As noted by the Ohio Supreme Court with regard to the exemption of an coroner's autopsy report, such reports are specific investigatory work product because an autopsy is an investigation in and of itself. State ex rel. Williams v. Cleveland, 64 Ohio St.3d at 547. Therefore, based on the high court's holding in Steckman and its progeny, a coroner's autopsy is subject to disclosure absent a pending or highly probable criminal action.
 (GG) Coroner's report-work product subject to disclosure because no criminal action is pending or highly probable.
 (HH) Police Receipt for Blood/Property belonging to James Rome received from Lucas County Coroner-does not contain any specific investigatory techniques or procedures.
 (II) Toledo Police Department Inventory Sheet of Seized/Collected Evidence-does not contain any specific investigatory techniques or procedures.
 (JJ) Toledo Police Forensic Laboratory Report concerning the results of gunshot tests to determine "muzzle to garment" distance-does not contain any specific investigatory techniques or procedures. The results of scientific tests are considered to be work product. State ex rel. Williams v. Cleveland
(1992), 64 Ohio St.3d 544 (results of scientific tests are work product); State ex rel. Jenkins v. Cleveland (1992), 82 Ohio App.3d 770 (scientific tests are work product); State ex rel. Nat'l Broadcasting Co. v. Cleveland (1992), 82 Ohio App.3d 202
(scientific testing procedures as investigatory techniques or work product). Therefore, per Steckman and its progeny, the report is not exempt from disclosure.
 (KK) Request for Analysis/Examination of Exhibits-Request for a check of James Rome's jacket for gunshot residue and "muzzle to garment" determination-does not contain any specific investigatory techniques or procedures.
 (LL) Diagram of the scene of the shooting-are considered "pictorials or visuals of objective facts and/or observations." State ex rel. Nat'l Broadcasting Co. v. Cleveland, 82 Ohio App. 3d at 210. Therefore, they are not exempt from disclosure. Id.
In summary, this court finds that all of the records in both the Board file and the internal affairs criminal investigation file are subject to disclosure under R.C. Chapter 149.43. Consequently, TPPA's sole assignment of error is found not well-taken. The judgment of the Lucas County Court of Common Pleas as to the majority of the records released by the City in this case is affirmed. Nonetheless, in applying the relevant case law, the judgment of the trial court is reversed as to those records, or portions thereof, determined to be exempt from disclosure under R.C. 149.43(A)(2)(c). TPPA is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
HANDWORK, J., RESNICK, J., KNEPPER, P.J., CONCUR.