The issue before us is whether the UCP, which strictly follows the independence principle, should prevail over state law, which provides that fraud in the transaction may enjoin payment on a letter of credit. The repercussions of our decision today are significant. Because I disagree with the majority's analysis and resolution of this case, I respectfully dissent.
In Mantua Mfg. Co. v. Commerce Exchange Bank (1996), 75 Ohio St.3d 1, the controversy was whether an issuing bank was required to obtain its customer's consent prior to renewing a letter of credit. The supreme court found that under the UCP, the issuing bank did not need to receive the consent of Mantua, its customer, in order to renew the letter of credit. However, the supreme court continued its analysis and found that even under the Ohio Revised Code the issuing bank was not obligated to receive Mantua's consent prior to renewing the letter of credit. The supreme court did not address the particular conflict between the UCP and the Revised Code presented in the case sub judice.
Nevertheless, in Mantua, 75 Ohio St.3d at paragraph one of the syllabus, the supreme court held the following:
 When a letter of credit states that it is subject to the Uniform Customs and Practice for Documentary Credits (Rev. 1983), International Chamber of Commerce Publication No. 400 ("UCP") and there is a direct conflict between a provision of the UCP and an analogous provision of R.C. Chapter 1305, the UCP's terms replace those of R.C. Chapter 1305, unless that replacement violates the conditions of R.C. 1301.02(C). (Emphasis added.)
R.C. 1301.02(C) provides:
 The effect of the provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code may be varied by agreement, except as otherwise provided in those chapters and except that the obligations of good faith, diligence, reasonableness, and care prescribed by those chapters may not be disclaimed by agreement, but the parties by agreement may determine the standards by which the performance of those obligations is to be measured if the standards are not manifestly unreasonable. (Emphasis added.)
In this case, the trial court found that "the actions of PTZ constitute fraud, that the letter of credit is vitiated by such fraud, and * * * there are sufficient grounds for enjoining payment on the letter of credit at issue herein[.]" By committing fraud, it is my opinion that PTZ violated its obligations of "good faith, diligence, reasonableness, and care" which, according to R.C. 1301.02(C), cannot be disclaimed by agreement. The majority limits these good faith obligations to the issuing bank and the beneficiary, as they are the primary players in R.C. Chapter 1305, which governs letters of credit. I do not agree with this narrow reading of the good faith obligation contained in R.C. 1301.02(C).
R.C. 1305.08(B) states the following:
 If an applicant claims that a required document is forged or materially fraudulent or that honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant, a court of competent jurisdiction may temporarily or permanently enjoin the issuer from honoring a presentation or grant similar relief against the issuer or other persons only if the court finds that:
 (1) The relief is not prohibited under the law applicable to an accepted draft or deferred obligation incurred by the issuer;
 (2) A beneficiary, issuer, or nominated person who may be adversely affected is adequately protected against loss that it may suffer because the relief is granted;
 (3) All of the conditions to entitle a person to the relief under the law of this state have been met; and
 (4) On the basis of the information submitted to the court, the applicant is more likely than not to succeed under its claim of forgery or material fraud and the person demanding honor does not qualify for protection under division (A)(1) of this section.[20]
(Emphasis added.)
Although Chapter 1305 of the Revised Code primarily deals with the relationships between the issuing bank and the beneficiary of a letter of credit, R.C. 1305.08(B) allows a trial court to enjoin payment on a letter of credit if the "honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant." In other words, if the beneficiary, PTZ, fails to act in good faith in its dealings and perpetrates a fraud upon the applicant, MAT, the letter of credit may be enjoined. Under the holding of Mantua, replacement of R.C. 1305.08 by the UCP would allow PTZ to escape its obligations of good faith, diligence, reasonableness, and care. Therefore, in a conflict between R.C. 1305.08 and the UCP, the revised code must prevail.
Moreover, R.C. Title 13, which applies to commercial transactions, appears to govern the actions of the parties in the underlying contract in this case.[21] R.C. 1301.09 imposes an obligation of good faith on the performance of every commercial transaction. R.C. 1301.09 states, "[e]very contract or duty within Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code imposes an obligation of good faith in its performance or enforcement." By committing fraud in its dealings with MAT, PTZ violated this explicit obligation of good faith. PTZ should not be allowed to escape the legal consequences of this fraud under the protection of the UCP.
The majority also argues that MAT and Jenkins are not entitled to an injunction because they have failed to demonstrate that there is not an adequate remedy at law for any fraud in the underlying contract. However, the supreme court has determined that where a statute specifically allows an injunction in certain circumstances, a person seeking injunctive relief need not establish the lack of an adequate remedy at law. State ex rel. Steckman v. Jackson (1994),70 Ohio St.3d 420, 426. Because R.C. 1305.08(B) specifically provides for injunctive relief, MAT and Jenkins need not demonstrate that they have no adequate remedy at law in order to obtain an injunction on the letter of credit.
The majority opinion cites cases from other courts that have determined that in a conflict between the UCP, which follows the independence principle, and state law, which allows for enjoinment of payment on a letter of credit where there is fraud in the underlying transaction, the UCP prevails. However, there are also numerous cases from courts that have followed state law (which is generally an adoption of the Uniform Commercial Code ["UCC"]) instead of the UCP, despite the fact that a letter of credit indicates that it is governed by the UCP. See, e.g.,Wyle v. Bank Melli of Tehran (N.D.Cal. 1983), 577 F. Supp. 1148 (applying California law to find that injunctive relief was available to enjoin payment on a letter of credit on the ground of the "fraud in the transaction" doctrine, despite the fact that letter of credit indicated that the UCP governed); Harris Corp. v. Natl. Iranian Radio Television
(C.A.11 1982), 691 F.2d 1344 (applying Florida law to affirm preliminary injunction of payment on letters of credit, holding that the fraud in the transaction doctrine applies even though the UCP governed, noting that other courts had "consistently" reached the same result); Cappaert Ents.v. Citizens S. Internatl. Bank (E.D.La. 1980), 486 F. Supp. 819
(applying Louisiana law despite the fact that the letter of credit indicated that it was subject to the UCP); Fleet Bank v. Druce (D.C.Me. 1992), 791 F. Supp. 17 (finding that a letter of credit was not exclusively controlled by the UCP and was a "contract" subject to the good faith requirement of Maine's Uniform Commercial Code); 3 Com. Corp.v. Banco Do Brasil, S.A. (2d Cir. 1999), 171 F.3d 739 (holding that although the UCP does not explicitly provide a "fraud in the transaction" defense, New York law makes the defense available to issuers of letters of credit that incorporate the UCP).
The majority's decision interprets the independence principle as a means to ensure efficient trade and simplicity in a transaction. That interpretation does not go far enough. The independence principle, among other things, is for the protection of the bank. It ensures that the bank, in order to honor the letter of credit, need look only to the four corners of the letter of credit and the documents presented independent of the underlying transaction. The bank may honor the letter of credit and act independently of the underlying transaction until enjoined by a court of competent jurisdiction as allowed by R.C. 1305.08(B).
I respectfully dissent from the majority.
________________________YOUNG, P.J.
[20] R.C. 1305.08(A)(1) does not apply to the factual pattern of this case. R.C. 1305.08(A) provides:
 If a presentation is made that appears on its face strictly to comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant:
 (1) The issuer shall honor the presentation, if honor is demanded by (a) a nominated person who has given value in good faith and without notice of forgery or material fraud, (b) a confirmer who has honored its confirmation in good faith, (c) a holder in due course of a draft drawn under the letter of credit which was taken after acceptance by the issuer or nominated person, or (d) an assignee of the issuer's or nominated person's deferred obligation that was taken for value and without notice of forgery or material fraud after the obligation was incurred by the issuer or nominated person; and
 (2) The issuer, acting in good faith, may honor or dishonor the presentation in any other case.
[21] R.C. 1301.05(A) states:
 Except as otherwise provided in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of the other state or nation shall govern their rights and duties. Failing such an agreement Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code apply to transactions bearing an appropriate relation to this state.
There is no evidence that the parties chose another body of law to govern their performance of the underlying contract. Therefore, R.C. 1301 et. seq. would govern the parties' dealings in the underlying contract.