JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Alvin Burgan ("Burgan"), appeals his conviction and sentence. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2004, Burgan was charged in a forty-two count indictment alleging child endangering and felonious assault involving two infant children, "T.L." and "K.L." The matter proceeded to a jury trial, at which the following evidence was presented.
 {¶ 3} Burgan met T.L. and K.L. in 2003 through their mother, Shuntama Harris ("Harris"). Burgan lived with his cousin in the apartment below Harris and her children. Burgan and Harris began a physical relationship shortly after he moved in downstairs and he spent almost every day with Harris and her children.
 {¶ 4} On February 13, 2004, Harris' mother, Tyjuan Harris ("grandmother") was babysitting seven-month old T.L. when she took him to the hospital because he would not stop crying and was unable to hold his bottle. After T.L.'s injuries were reported to the Cuyahoga County Department of Children and Family Services, the agency removed two-year-old K.L. from Harris' custody and placed him in the temporary custody of the grandmother. The grandmother and K.L. went to the hospital to visit T.L., and the grandmother noticed that K.L. could barely walk. K.L. was subsequently admitted to the hospital.
 {¶ 5} The doctors found a fracture in T.L.'s left arm, multiple fractures in both legs, and seven fractured ribs. K.L. had fractures in both legs and his left arm, as well as three burns. Two of the burns were about one inch in size, but the third and most severe burn extended from his elbow to his shoulder. T.L. exhibited both old and new fractures. K.L.'s arm had been repeatedly broken and his burns were just days old.
 {¶ 6} Both Harris and Burgan were charged with child endangering and felonious assault. Harris pled guilty to six counts of child endangering and agreed to testify against Burgan. The court subsequently sentenced her to four years in prison.
 {¶ 7} Twelve of the forty-two counts against Burgan were dismissed during trial. The jury convicted Burgan of fourteen counts of endangering children and one count of felonious assault, but acquitted him of the remaining charges. Burgan was sentenced to an aggregate term of ten years incarceration. He now appeals, raising three assignments of error.
 {¶ 8} In his first assignment of error, Burgan argues that his conviction was against the manifest weight of the evidence. In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra at 387. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id.
 {¶ 9} We recently stated in State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict when the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus;State v. Eley (1978), 56 Ohio St.2d 169. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995),103 Ohio App.3d 368, 370-371, 659 N.E.2d 814. This is a difficult standard to meet, and we are not persuaded it was met in the instant case.
 {¶ 10} Burgan was charged with felonious assault pursuant to R.C. 2903.11(A)(1), which provides in pertinent part that:
"No person shall knowingly * * * cause serious physical harmto another * * *."
 {¶ 11} Burgan was also indicted on multiple counts of endangering children, pursuant to R.C. 2919.22, which provides in pertinent part that:
"(A) No person, who is the parent, guardian, custodian, personhaving custody or control, or person in loco parentis of a childunder eighteen years of age * * shall create a substantial riskto the health or safety of the child, by violating a duty ofcare, protection, or support. * * *
 (B) No person shall do any of the following to a child undereighteen years of age or a mentally or physically handicappedchild under twenty-one years of age:
 (1) Abuse the child;
 (2) Torture or cruelly abuse the child;
 (3) Administer corporal punishment or other physicaldisciplinary measure, or physically restrain the child in a cruelmanner or for a prolonged period, which punishment, discipline,or restraint is excessive under the circumstances and creates asubstantial risk of serious physical harm to the child;
 (4) Repeatedly administer unwarranted disciplinary measures tothe child, when there is a substantial risk that such conduct, ifcontinued, will seriously impair or retard the child's mentalhealth or development * * *."
 {¶ 12} Burgan argues that his conviction is against the manifest weight of the evidence because the main witness against him, Harris, had motivation to blame him for the children's injuries. Harris agreed to testify against Burgan in exchange for reduced charges. However, she received no promise of a definite sentence in exchange for her testimony. In fact, the State requested that she receive the maximum sentence at her sentencing hearing.
 {¶ 13} Proof of guilt may be made by circumstantial evidence, real evidence, and direct or testimonial evidence, or any combination of the three, and all three have equal probative value. State v. Nicely (1988), 39 Ohio St.3d 147,529 N.E.2d 1236.
 {¶ 14} The evidence against Burgan in the record is overwhelming. Harris testified that she saw Burgan physically discipline K.L. at least twice a day in January and February 2004. She was able to testify to numerous incidents of abuse.
 {¶ 15} Harris testified that in the beginning of February 2004, Burgan disciplined K.L. because the child had eaten a cigarette. The next day K.L. was limping. The grandmother testified that K.L. could not stand on his own when she took him to the hospital more than a week after the incident.
 {¶ 16} Harris testified about another incident where Burgan attempted to beat then one-year old K.L. with a belt and the child twisted while trying to escape. That story was substantiated by the doctor's testimony that K.L. had a broken arm, likely caused by a twisting force.
 {¶ 17} The testimony also revealed that Burgan told Harris not to take K.L. to the hospital after she discovered the long burn on his arm because it was not "that bad." Harris testified about an incident where Burgan held K.L. under water and the infant swallowed water, which then "shot out like a fountain." The grandmother testified that K.L. was still afraid of the bathtub.
 {¶ 18} Harris also testified about an incident when she discovered a knot and a bruise on K.L.'s face. Burgan told her that the child had run into a drawer.
 {¶ 19} The doctor was able to testify to a range of dates when the injuries could have occurred. The children's injuries all occurred after Burgan's contact with the family.
 {¶ 20} Burgan's theory at trial was that K.L. was an active child who was continually jumping off furniture and hurting himself. The grandmother testified that after she gained custody of the children, K.L. had been very active but had not suffered any further injuries. Burgan's theory also does not explain T.L.'s numerous injuries. T.L. was admitted to the hospital in December 2003, for failure to thrive. At that time, the doctors did not observe any acute injury to the baby. When the baby was admitted to the hospital in February 2004, he had multiple fractures to his left arm, both legs, and ribs. The doctor indicated that the fractures were at different stages of healing and that major traumatic events or a pathological disease would be the cause of the injuries. The doctor further stated that T.L. did not suffer from any condition such as brittle bone disease that made his bones easily fracture.
 {¶ 21} K.L. also suffered fractures to both legs. The doctor testified that the fractures occurred sometime in January or early February 2004. K.L.'s right arm had been broken by a twisting force. The doctor testified that K.L. presented with "significant callus formation with misalignment," indicating that his arm had suffered a trauma in which it had been broken and healed multiple times.
 {¶ 22} Although Harris admitted that she never saw Burgan discipline seven-month-old T.L., the circumstantial evidence pointed to Harris as the source of the abuse. The evidence showed that Harris and Burgan were the only people with constant access to the children, and neither the children's grandmother nor their biological father visited them in January or early February 2004. Harris testified that she did not physically discipline her children and that Burgan was often alone with them.
 {¶ 23} We realize that Harris testified that she lied in her original statement to the police and later changed her statement. However, she claimed that she lied because she was scared and did not realize the seriousness of the situation. The jury had the opportunity to weigh all the evidence, including any inconsistencies in testimony or witness statements, before rendering a verdict. The jury found the State's witnesses credible, and we will not usurp their role by second-guessing their conclusion. Based on our review of the testimony and evidence adduced at trial, we cannot say that the jury lost its way in convicting Burgan of child endangering and felonious assault.
 {¶ 24} Therefore, we find that his conviction was not against the manifest weight of the evidence. The first assignment of error is overruled.
 {¶ 25} In the second assignment of error, Burgan argues that the trial court committed plain error when it failed to instruct the jury that it must unanimously find him guilty of one or the other form of endangering children. Burgan contends that it is impossible to discern which instances of abuse the jurors found supported the various alternative theories presented by the indictment.
 {¶ 26} Crim.R. 30(A) states:
"At the close of the evidence or at such earlier time duringthe trial as the court reasonably directs, any party may filewritten requests that the court instruct the jury on the law asset forth in the requests. Copies of such requests shall befurnished to all other parties at the time of making suchrequests. The court shall inform counsel of its proposed actionupon the requests prior to their arguments to the jury, but thecourt shall instruct the jury after the arguments are completed.The court need not reduce its instructions to writing.
 A party may not assign as error the giving or failure to giveany instructions unless he objects thereto before the juryretires to consider its verdict, stating specifically the matterto which he objects and the grounds of his objection. Opportunityshall be given to make the objection out of the hearing of thejury."
 {¶ 27} A failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver. State v. Williford (1990),49 Ohio St. 3d 247, 251, 551 N.E.2d 1279.
 {¶ 28} Defense counsel did not object to the instruction given to the jury; therefore, the failure to include an augmented unanimity instruction would have to amount to plain error. A defective jury instruction does not rise to the level of plain error unless it is clear that the outcome of the trial would have been different absent the error. State v. Campbell (1994),69 Ohio St.3d 38, 630 N.E.2d 339; State v. Blair (July 6, 2000), Cuyahoga App. No. 76511. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips,74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643. A single challenged jury instruction will not be reviewed in isolation, but within the context of the entire charge. See State v. Hardy
(1971), 28 Ohio St.2d 89.
 {¶ 29} Burgan cites State v. Johnson (1989),46 Ohio St.3d 96, 545 N.E.2d 636 (overruled by State ex rel. Steckman v.Jackson (1994), 70 Ohio St.3d 420, 639 N.E.2d 83) to support his argument that the jury should have received an augmented instruction on unanimity. In Johnson, supra, the court stated that if a single count can be divided into two or more distinct conceptual groupings, a jury shall be instructed that it must unanimously conclude that a defendant committed acts falling within a specific grouping. In this case, we do not have a single count. Burgan was indicted on multiple counts of child endangering under separate sections of the statute. Therefore,Johnson does not apply.
 {¶ 30} Burgan was indicted under five different subsections of the child endangering statute. The jury convicted him of charges alleging that he abused T.L. and K.L., resulting in serious physical harm; did cruelly abuse or torture T.L. and K.L., resulting in serious physical harm; and did administer corporal punishment or other physical disciplinary measure which was excessive under the circumstances and created a substantial risk of serious physical harm.[1] See R.C. 2919.22.
 {¶ 31} We have said that a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for conviction. State v. Hamad, Cuyahoga App. No. 81189, 2003-Ohio-4401. The trial court gave a general unanimity instruction to the jury. The jury was instructed that each count in the indictment constituted a separate and distinct matter and that it must consider each count and evidence applicable to each count separate from all other counts. Therefore, the jury was instructed on each individual theory of child endangering.
 {¶ 32} We find that the evidence was sufficient to find Burgan guilty of child endangering under any of the applicable code sections and the trial court did not err by failing to give separate instructions. Moreover, there is absolutely no evidence that the jury did not decide with unanimity. The jurors individually signed verdict forms for each count of the indictment and the trial court polled each juror in open court after the verdict was returned. We find no plain error. The outcome of the trial would not have been different if the jury had been instructed differently, nor was the court under any obligation to give the jury a different unanimity instruction.
 {¶ 33} The second assignment of error is overruled.
 {¶ 34} In the third assignment of error, Burgan argues that he should be afforded a new sentencing hearing because the journal entry from the sentencing does not reflect what the court said at the hearing.
 {¶ 35} All sentences of imprisonment are to be served concurrently, unless the trial court specifies the sentences are consecutive. R.C. 2929.41. Burgan argues that the court failed to state that counts five, nine, ten, and eleven run concurrent to each other and consecutive to others. We agree, but find that the court set forth a complete sentence, which was correctly memorialized in the court's sentencing memorandum filed February 25, 2005.
 {¶ 36} The court sentenced Burgan to a total of ten years in prison. T.L. was the named victim in counts five, nine, ten and eleven. The court sentenced Burgan to a concurrent two-year sentence on counts five and nine and a concurrent two-year sentence on counts ten and eleven. The court further stated that counts five and nine would run consecutively to counts ten and eleven, for a total of four years for crimes against T.L.
 {¶ 37} The court merged many of the remaining counts that related to K.L. and sentenced Burgan to a total of six years for crimes against the older child. The court also stated that those counts would run consecutive to all other counts. The journal entry, however, fails to state the following from the court's own sentencing memorandum:
"Counts 5, 9, 10 and 11 relate to the injuries to [T.L.].Having determined that consecutive sentences are appropriate inthis case, the court orders that defendant's 2 year sentences forcounts 5 and 9 be served concurrently to each other butconsecutively to his sentences for counts 10 and 11. Thesentences for counts 10 and 11 shall be served concurrently toeach other."
 {¶ 38} The trial court's failure to properly journalize Burgan's sentence, after it had been stated in open court and transcribed, does not constitute a denial of his constitutional rights. State v. Boyd, Cuyahoga App. Nos. 82921, 82922, 82923,2004-Ohio-368. Although the trial court speaks through its journal and should properly journalize a defendant's sentence, Burgan has suffered no prejudice as a result of the clerical error, nor is there any need for a resentencing. Rather, the proper remedy for correcting a clerical error is the entry of a nunc pro tunc order. See State v. Brown, 136 Ohio App.3d 816,2000-Ohio-1660, 737 N.E.2d 1057. Crim.R. 36 allows the trial court to correct a clerical mistake in a judgment or order at any time and App.R. 9(E) authorizes this court to direct that the misstatement be corrected.
 {¶ 39} Therefore, we find that the trial court correctly stated the sentence it imposed, but we order that the journal entry be amended pursuant to App.R. 9(E) and Crim.R. 36 to correct the clerical mistake so the journal entry reflects the language of the sentencing memorandum regarding counts five, nine, ten, and eleven. The third assignment of error is well taken in part.
 {¶ 40} Accordingly, the judgment is affirmed. Case remanded for nunc pro tunc correction of the journal entry.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J. and Gallagher, J. concur.
[1] Other charges in the indictment contained allegations of child endangering pursuant to R.C. 2919.22(B)(4). Those charges were dismissed prior to jury deliberations.