DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Frederick C. West, appeals from his conviction in the Summit County Court of Common Pleas for aggravated robbery and tampering with evidence. This Court affirms.
 I. {¶ 2} Appellant was charged in the Cuyahoga Falls Municipal Court with aggravated robbery, in violation of R.C. 2911.01, a first-degree felony. The case was bound over to a grand jury. Subsequently, the Summit County Grand Jury indicted Appellant on one count of aggravated robbery, in violation of R.C.2911.01(A)(1), a first-degree felony, and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a third-degree felony. Appellant pled not guilty to the charges.
 {¶ 3} A jury trial was held. A jury found Appellant guilty of both charges. The trial court sentenced Appellant accordingly.
 {¶ 4} Appellant timely appealed from his convictions, asserting four assignments of error for review. We address the first three assignments of error together.
 II. A. First Assignment of Error
"APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY AND TAMPERING WITH EVIDENCE WERE AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEEN [sic] AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION."
 Second Assignment of Error
"APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY AND TAMPERING WITH EVIDENCE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION."
 Third Assignment of Error
"THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY DENYING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AND AGAIN AT THE CONCLUSION OF ALL THE EVIDENCE WHERE THE STATE OF THE EVIDENCE WAS SUCH WHERE REASONABLE MINDS COULD NOT FAIL TO FIND REASONABLE DOUBT AND APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY THE TESTIMONY AND EVIDENCE PRESENTED."
 {¶ 5} In his first and third assignments of error, Appellant challenges his conviction, alleging that the evidence was insufficient to sustain the conviction. In his second assignment of error, Appellant maintains that the convictions were against the manifest weight of the evidence. We disagree.
 {¶ 6} As a preliminary matter, this Court observes that sufficiency of the evidence and weight of the evidence are legally distinctive issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 7} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 8} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 10} In the instant case, Appellant was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1), and tampering with evidence, in violation of R.C. 2921.12(A)(1). R.C.2911.01(A)(1) sets forth the following:
"No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" See, also, R.C. 2913.01(K); R.C. 2923.11(A).
R.C. 2921.12(A)(1) states:
"No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"
 {¶ 11} Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. State v. Logan (1979),60 Ohio St.2d 126, 131. Culpable mental states can be established by circumstantial as well as direct evidence. State v. Kincaid,
9th Dist. No. 01CA007947, 2002-Ohio-6116, at ¶ 22, citingKreuzer v. Kreuzer (2001), 144 Ohio App.3d 610, 613.
 {¶ 12} Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" State v. Daniels (June 3, 1998), 9th Dist. No. 18761, at *2, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. It is well established that circumstantial evidence and direct evidence possess the same probative value. State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, at *6, quoting Jenks, 61 Ohio St.3d at paragraph one of the syllabus. "`Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" State v.Chisolm (July 8, 1992), 9th Dist. No. 15442, at *2, quotingJenks, 61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990), 51 Ohio St.3d 160, 168, citing Hurt v. Charles J. Rogers Transp. Co. (1955),164 Ohio St. 329, 331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusion in a case. Lott, 51 Ohio St.3d at 168.
 {¶ 13} The victim, Barbara Ann Stair, testified on behalf of the prosecution regarding the incident that occurred in the evening on Sunday, March 6, 2005, at the Winter Parkway/Studio City One apartment complex in Cuyahoga Falls, in Summit County, Ohio. Ms. Stair was bringing her infant grandson back to her daughter, the grandson's mother, who lived in this apartment complex. It was late afternoon, and it was still light outside. Ms. Stair walked down the main hallway to the main door, which led to the elevators. She noticed a black man standing to the right of the door by a picture window. The man was wearing a gray hooded sweatshirt and dark sweatpants. Ms. Stair proceeded through the main door to the elevators and placed the infant carrier down on the floor. She testified that she did not see any other persons in the vicinity besides the man with the hooded sweatshirt. As soon as she stood up, Ms. Stair noticed a man standing behind her. Ms. Stair recounted the ensuing events as follows:
"He put his arm around me, put a knife against my left earlobe and said to drop my purse. I didn't immediately.
"He repeated it. I don't know whether I said it was over my neck or over my head. He dropped his arm and picked up the strap. I dropped the purse down. He picked it up.
"Just to the right is a hallway that goes straight out, and he was gone."
 {¶ 14} Ms. Stair testified that she briefly saw a blade of a knife, which she described as being the same length as a pen, being dull, i.e., having no shine or luster, and having a sharp point. Ms. Stair testified that her purse was burgundy in color. She stated that she was able to see the assailant's hand and the side of his face as he escaped outside with her purse; she confirmed that the assailant was black. She also testified that the assailant was wearing a hooded sweatshirt and dark pants similar to the man she saw standing by the picture window. Ms. Stair stated that she followed the assailant for several seconds out the door, but by that time the assailant was out of sight. Ms. Stair stated that the assailant could have either escaped outside or went up a stairway inside the building; she noticed that both areas were clear. Ms. Stair then took the elevator to the third floor, where she encountered a security guard. She immediately informed the security guard of the incident, and the guard called the police.
 {¶ 15} Ms. Stair testified that she spoke to the police and also submitted a written statement. That same evening, the police discovered her purse and returned it to her. Ms. Stair testified that the only contents missing from the purse was approximately ten dollars in cash and change. But she could not identify Appellant as the assailant at trial.
 {¶ 16} Elizabeth Stevens also testified on behalf of the prosecution. Ms. Stevens lived across the street from Studio One, in Studio Three of the Studio City apartment complex. At the time in question, Ms. Stevens was standing in the lobby of her building by the window, looking outside. She could see straight into the lobby of Studio City Studio One, which was approximately 200 feet away from the lobby in Studio Three. Ms. Stevens noticed a person, whom she later identified as Appellant, standing outside, wearing a gray hooded sweatshirt. She then observed Appellant put on his hood, step inside Studio One, and stand in front of the picture window. Ms. Stevens could identify the person as Appellant because she had spoken to him on several occasions in the past. Ms. Stevens then observed a woman walk into the building with a baby carrier and proceed to the elevator. She then observed Appellant run over to the woman, the woman threw up her arm, the Appellant escaped, and the woman chased after Appellant. Ms. Stevens testified that she later identified Appellant out of a line-up as the assailant. On cross-examination, Ms. Stevens admitted that she was on her cellular phone at the time she witnessed the incident occurring across the street, and that she was not focused entirely on what was occurring. However, she also noted that she is a "nosy" person and that for that reason she was paying attention to the situation.
 {¶ 17} The security guard on duty at the time of the incident, Roy Lloyd, testified that he was on the third floor of the Studio One apartment complex when he saw a man wearing a gray hooded sweatshirt either get off the elevator or come from the adjacent stairwell and enter Apartment Number 62. Mr. Lloyd testified that about one or two minutes later, a woman exited the elevator and related to him that she had been robbed at knifepoint. Mr. Lloyd also testified that Frederick West was listed as the lessor for Apartment Number 62, and that this apartment faced the back of the building.
 {¶ 18} Colette Walk testified on behalf of the prosecution regarding the incident in question. Ms. Walk knew Appellant since February or March 2005, and she moved in with him in Apartment 62 in Studio City soon after and lived with Appellant at the time the incident occurred. Ms. Walk testified that in the afternoon on March 6, 2005, Appellant came into the apartment, "kind of coming through the door rather quickly and straight into the bathroom." Ms. Walk then "heard something like counting money, and he came out and tossed something off the balcony that was in the bedroom. Which, when I looked out, I seen it was a brown purse." Ms. Walk testified that she had also heard a rattling inside the bathroom, and that Appellant had produced change when he exited the bathroom. Ms. Walk explained that Appellant's "eyes were real big like he was scared." Appellant then made a comment in front of Ms. Walk "about only $3.00 or something to that effect," which she interpreted as relating to the contents of the purse. Soon after, Ms. Walk heard knocks on their door, but Appellant instructed her not to answer the door and to tell anyone who asked that he had been inside the apartment all day asleep. Appellant also instructed her to tell people that they were gone from the apartment complex all weekend. Ms. Walk testified, that, when she later confronted Appellant, he admitted to taking the purse. She then left the apartment because she did not want to be involved in the situation and walked to a friend's house, where she stayed for several days. She then returned to the apartment, and an argument ensued between her and Appellant. Ms. Walk testified that Appellant then forbade her to use the phone and told her that she could no longer stay at the apartment. Ms. Walk dialed 9-1-1 when Appellant was out of sight. When the police arrived, she informed them that he had stolen the purse.
 {¶ 19} At trial, Ms. Walk testified that Appellant was wearing a blue, hooded sweatshirt and blue pants, and that "there may have been a black coat over it, and a gray sweatshirt. I can't remember which on that. But I know it was blue." While she did not see a purse in Appellant's hand when she saw "him doing the movement of throwing something off" the balcony, Ms. Walk did see the purse on the ground below immediately after this motion. Ms. Walk insisted that the purse was not on the ground prior to this incident because she had been looking out the window throughout the day.
 {¶ 20} Ms. Walk further testified that she told the police about the incident "from rage. He was arguing with me and throwing me out. Secondly, when he threw it [the purse] out there I just felt bad for the lady." The prosecution also elicited testimony from Ms. Walk regarding criminal offenses with which she was charged. Ms. Walk stated during direct examination that she had been convicted of shoplifting four times in the past, all felony offenses, and was currently serving a sentence in the Summit County Jail. Ms. Walk related that she pled guilty to the most recent charge and that she was promised that the prosecutor in the instant case "would tell Judge Murphy that I cooperated and maybe I would have a chance to get treatment [for drug addiction], because that is what I want to do, I want to get better." When asked whether she was fabricating the story about Appellant and the purse just to get this treatment, Ms. Walk answered in the negative. Ms. Walk explained that she still had to serve the balance of her one-year sentence, whether that time was spent in prison or on community control at the Interval Brotherhood Home, a treatment facility in Summit County. On cross-examination, Ms. Walk admitted that she and Appellant had smoked crack cocaine that entire weekend. Defense counsel attempted to establish that Ms. Walk's chronic use of crack cocaine had affected her memory. However, Ms. Walk testified to the contrary; she insisted that she still had "a pretty good memory."
 {¶ 21} Officer Travis James Goodman from the Cuyahoga Falls Police Department testified that he arrived at the scene and was informed by Mr. Lloyd of the person entering Apartment 62. Officer Goodman approached the apartment and heard "people talking inside, some noises." Officer Goodman attempted to make contact with the occupants of the apartment for approximately 30 minutes by knocking and calling, but no one would respond. In the course of his investigation, Officer Goodman discovered the purse lying outside on the ground; Ms. Stair identified it as hers.
 {¶ 22} Detective Randy Tlumac of the Cuyahoga Falls Police Department testified that Ms. Stair was not able to identify a suspect out of a photo array, but that Ms. Stevens did identify Appellant as the assailant the day after the incident. Detective Tlumac stated that during a phone conversation, Appellant denied being home that weekend, and that Appellant had failed to show up for a scheduled interview on March 9, 2005.
 {¶ 23} Upon a careful review of the record, and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Appellant guilty of aggravated robbery and tampering with evidence. See Otten, 33 Ohio App.3d at 340.
 {¶ 24} Appellant argues that Ms. Stair's testimony, that Appellant wore a gray sweatshirt, conflicted with Ms. Walk's testimony. However, Ms. Walk did testify that Appellant may have been wearing a gray sweatshirt. The jury as the trier of fact was charged with weighing all of the evidence. We cannot find that the jury "lost its way" in resolving this factual issue. See id.
 {¶ 25} Appellant also argues that the jury should not have relied on the testimony of Ms. Stair, Ms. Stevens, and Mr. Lloyd because their testimony was not credible or reliable. However, the trial court gave the jury the proper instruction regarding its role in evaluating the credibility of the witnesses; the jury chose to believe the state's witnesses and version of events, as it was entitled to do. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 26} In addition, Appellant takes issue with Ms. Walk's testimony. Specifically, he argues that her statements to the police were "motivated by her anger to get even with appellant for kicking her out of his apartment and her desire to curry favor with the prosecutor's offer for a favorable recommendation so she could obtain an early judicial release from prison in exchange for her testimony against appellant." However, both the anger and judicial release issues were addressed while Ms. Walk testified. See, e.g., State v. Riley, 9th Dist. No. 21852,2004-Ohio-4880, at ¶ 17. Thus, the jury was able to assess the credibility of the witness in light of these potential motivations. Furthermore, Ms. Walk did not receive a guarantee that she would be granted judicial release in exchange for her testimony in the instant case. See State v. Burgan, 8th Dist. No. 86176, 2006-Ohio-812, at ¶ 12. Ultimately, we will not question the jury's resolution of these credibility issues. See id.
 {¶ 27} Finally, Appellant argues that because the police ultimately found the purse in plain sight on the ground outside the apartment, that he cannot be convicted of tampering with evidence. However, it is irrelevant that the police ultimately found the purse, which was in plain sight from their vantage point. The jury could have reasonably inferred from the circumstances that Appellant "removed" the purse from his possession in the apartment in order to preclude it from being found in the apartment by the police, who were knocking on his door and attempting to reach him by phone. See R.C. 2921.12
(A)(1).
 {¶ 28} Having found that Appellant's convictions were not against the manifest weight of the evidence, we also find that the convictions were supported by sufficient evidence. SeeRoberts, supra.
 {¶ 29} Appellant's first, second, and third assignments of error are overruled.
 B. Fourth Assignment of Error
"APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS WAS VIOLATED BY THE MISCONDUCT OF THE PROSECUTOR DURING CLOSING ARGUMENTS."
 {¶ 30} In his fourth assignment of error, Appellant asserts that he was denied his right to a fair and impartial trial due to statements the prosecutor made during closing arguments. We disagree.
 {¶ 31} In reviewing allegations of prosecutorial misconduct, we must consider the complained-of conduct in the context of the entire trial. State v. Wright, 9th Dist. No. 02CA008179, 2003-Ohio-3511, at ¶ 9. Ultimately, the prosecuting attorney's trial conduct can only be made a ground for error on appeal if the conduct deprives the defendant of a fair trial. State v.Apanovitch (1987), 33 Ohio St.3d 19, 24. "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v. Overholt, 9th Dist. No 02CA0108-M, 2003-Ohio-3500, at ¶ 47. The defendant must demonstrate that there is a reasonable probability, that, but for the prosecutor's misconduct, the result of the proceeding would have been different. Id.
 {¶ 32} Counsel is afforded wide latitude during closing arguments to present the most convincing position. State v.Suttles (Nov. 15, 2000), 9th Dist. No. 19453, at *5. It is proper for the prosecution to comment upon the evidence in closing argument and to state the appropriate conclusions to be drawn. State v. Strobel (1988), 51 Ohio App.3d 31, 39; Statev. Draughn (1992), 76 Ohio App.3d 664, 670. The prosecution may urge its theory of what the evidence indicates, so long as it does not mislead the jury. State v. Malone (Sept. 24, 1986), 9th Dist. Nos. 12533 12542, at *5. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Overholt at ¶ 47, quotingState v. Hill (1996), 75 Ohio St.3d 195, 204.
 {¶ 33} Appellant argues that the assistant prosecutor made a statement during closing arguments that prejudiced his right to a fair trial. Appellant references the following portion of the closing argument:
"[PROSECUTOR:] Detective Tlumac — this in interesting. He leaves a message for the defendant. Defendant calls him back and in that conversation says, `I was out of town.'
"Now, this is not a case with an alibi defense. When you want to say you were somewhere else, under the law you have to file an alibi to say where you were. That's never been done so the defendant is not alleging in this case that he wasn't there. No alibi has been filed or presented.
"[DEFENSE COUNSEL:] Objection, Your Honor.
"THE COURT: Overruled."
The prosecutor then proceeded to state the following:
"[PROSECUTOR:] But the defendant tells the detective I was out of town. The detective said, `You know what? We need to talk about this.'
"Okay. They schedule a meeting for [May] 9th. Guess what happens? He doesn't show up."
 {¶ 34} Appellant maintains that this statement "implies that appellant had a burden to present evidence of his whereabouts and thus must prove innocence to the jury." Appellant continues, "By implying or by creating the impression to the jury that appellant had to prove something * * * in this matter the appellee, by and through the prosecutor, misinformed the jury on the requirements of the law and severely prejudiced appellants' right to receive a fair and impartial jury."
 {¶ 35} However, the court informed the jury that "the lawyers are not permitted to instruct you as to the law [but] are permitted to comment on the law as they talk with you during the argument period." The court instructed the jury as follows: "You are to accept the law as I instruct you in it. You are not permitted to change the law in any respect." Furthermore, the court instructed, "the evidence does not include the indictment, the opening statements or the closing arguments."
 {¶ 36} We presume the jury followed the court's instructions when deliberating in this case. See, e.g., State v. Downing,
9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 51. Appellant does not maintain that the trial court's jury instructions were improper; nor do we find any error in the court's instructions. Thus, assuming, without determining, that the prosecution made a misstatement of the governing law, any misstatement would be "cured by the instruction of the trial court judge." Id.
 {¶ 37} Appellant's fourth assignment of error is overruled.
 III. {¶ 38} Appellant's assignments of error are overruled. Appellant's conviction in the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J., Moore, J., concur.