[Cite as *Colahan v. Worthington Police Dept.*, 2018-Ohio-4594.]

| | |
|---|---|
| STEPHEN T. COLAHAN | Case No. 2018-00928PQ |
| Requester | Judge Patrick M. McGrath |
| v. | DECISION |
| WORTHINGTON POLICE DEPARTMENT | |
| Respondent | |

**{¶1}** Before the court in this public-records dispute are (1) objections filed on October 12, 2018, by respondent Worthington Police Department (Worthington PD) to Special Master Jeffery W. Clark's report and recommendation issued on October 2, 2018, and (2) a response filed on October 23, 2018, by requester Stephen T. Colahan to Worthington PD's written objections. The matter, which is fully briefed, is before the court for determination.

## I.   Background and Procedural

**{¶2}** On June 7, 2018, pursuant to R.C. 2743.75(D), Colahan filed a complaint against Worthington PD wherein Colahan alleged a denial of access to public records. The court appointed attorney Jeffery W. Clark as a special master in the cause. Special Master Clark referred the case to mediation. After mediation failed to successfully resolve all disputed issues between the parties, the court returned the case to the docket of Special Master Clark.

**{¶3}** On August 21, 2018, Worthington PD, through counsel, moved to dismiss Colahan's complaint. Three days later Special Master Clark ordered Worthington PD to file certain documents under seal. And on October 2, 2018, Special Master Clark issued a report and recommendation wherein Special Master Clark recommended that Worthington PD's motion to dismiss should be denied and that the case should be

decided on the merits. (Report and Recommendation, 5.) In the conclusion of the report and recommendation, Special Master Clark states:

> Upon consideration of the pleadings and attachments, I find that [Colahan] has established by clear and convincing evidence that [Worthington PD] violated R.C. 149.43(B) by withholding portions of the initial incident report as detailed above, and by withholding other records in the investigatory file to which no exception applies. Beyond these documents, I find that [Colahan] fails to establish [Worthington PD's] duty to disclose any other records at this time. I recommend that the court issue an order for [Worthington PD] to disclose the additional pages of the initial incident report as identified above. I further recommend that the court order [Worthington PD] to review the investigatory file and disclose pages WP000700-WP000703 and any other copies of statutes, media articles or tapes, and publicly available court filings contained in the investigatory file. I recommend that costs be shared equally between the parties.

(Report and Recommendation, 13-14).

{¶4} On October 12, 2018—seven business days after Worthington PD received a copy of Special Master Clark's report and recommendation—Worthington PD, through counsel, filed written objections to Special Master Clark's report and recommendation. In a certificate of service accompanying Worthington PD's written objections, Worthington PD's counsel represents that he served a copy of Worthington PD's objections on Colahan's counsel "via certified mail, return receipt requested" on October 12, 2018.

{¶5} On October 23, 2018—seven business days after Worthington PD filed its written objections—Colahan, through counsel, filed a response in opposition to Worthington PD's written objections. According to a certificate of service accompanying Colahan's response, Colahan's counsel certified that a copy of Colahan's response "was emailed" to Worthington PD's counsel on October 23, 2018.

## II.    Law and Analysis

**{¶6}**    R.C. 2743.75(F)(2) governs objections to a report and recommendation issued by a special master of this court relative to a public-records dispute.  Pursuant to R.C. 2743.75(F)(2),

> [e]ither party may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested. Any objection to the report and recommendation shall be specific and state with particularity all grounds for the objection. If neither party timely objects, the court of claims shall promptly issue a final order adopting the report and recommendation, unless it determines that there is an error of law or other defect evident on the face of the report and recommendation. If either party timely objects, the other party may file with the clerk a response within seven business days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested. The court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation.

Because Worthington PD has filed written objections to Special Master Clark's report and recommendation, R.C. 2743.75(F)(2) applies in this instance.

### A. Worthington PD's written objections are timely filed and Worthington PD has complied with R.C. 2743.75(F)(2)'s requirements for service of written objections.

**{¶7}**    A review of the court's records discloses that Worthington PD filed its written objections within seven business days after Worthington PD received a copy of Special Master Clark's report and recommendation.  And, according to the certificate of service accompanying Worthington PD's written objections, Worthington PD's counsel sent a copy of Worthington PD's written objections to Colahan's counsel, by certified mail, return receipt requested, on October 12, 2018.   The court determines that Worthington PD's written objections are timely filed and Worthington PD complied with R.C. 2743.75(F)(2)'s requirements for service of written objections.

**B. Colahan's response is timely, but Colahan has not complied with R.C. 2743.75(F)(2)'s requirements for service of a response to a party's objections.**

{¶8} Colahan filed a response to Worthington PD's objections on October 23, 2018, which is seven business days after the date that Worthington PD represents that it sent a copy of Worthington PD's written objections by certified mail to Colahan's counsel. The court finds that Colahan's response is timely filed. But because Colahan's counsel represents that she sent a copy of Colahan's response to Worthington PD's written objections by email, Colahan has failed to comply with R.C. 2743.75(F)(2)'s requirement that directs a party to send a copy of a response to the objecting party by certified mail, return receipt requested.

{¶9} The court determines that Colahan's response is procedurally irregular.

**C. Worthington PD objects in part to Special Master Clark's report and recommendation.**

{¶10} Worthington PD states in its objections: "Worthington Police agrees to produce the three-and-a-half pages of the Incident Report identified by the Special Master. Worthington Police also agrees to produce a statute with investigative highlights identified as WP000700 – WP000703. Finally, Worthington Police will disclose any other copies of statutes, media articles or tapes, and publicly available court filings." (Objections, 2, footnote 1.)

{¶11} Worthington PD therefore does not object entirely to Special Master Clark's report and recommendation. *See* Report and Recommendation at 14 (recommending that the court order Worthington PD to disclose pages WP000700-WP000703 and any other copies of statutes, media articles or tapes, and publicly available court filings contained in the investigatory file). Worthington PD does, however, object to a portion of Special Master Clark's report and recommendation. Worthington PD presents the following objections:

(1) "The Special Master made an error of law by directing Worthington Police to produce evidence of an alleged crime."

(2) "The Special Master made an error of law and fact by determining that the letters were received by Worthington Police at the same time that the reporting officer took the initial Incident Report."

(3) "The Special Master made an error of law by failing to apply constitutional protections to the victims and witnesses identifiable by the letters."

Because Worthington PD's objections are interrelated, the court will address them objections together.

{¶12} Worthington PD's objections pertain to Special Master Clark's findings, conclusions, and recommendations concerning letters sent to an apparent victim of the crime of menacing by stalking. In the report and recommendation, Special Master Clark states:

> Contemporaneous with the creation of the incident report, the victim delivered a FedEx envelope to Worthington PD containing either 60 or 80 letters. (Response, Memo in Support at 1; Exh A at 2, ref. PROPERTY section, DESCRIPTION field; WP000615.) Based on this chronology, and the express reference to the letters in the incident report, I find that the referenced letters constitute part of the initial incident report. *See Maurer*, 91 Ohio St.3d at 54, 56.

(Report and Recommendation, 8.) Worthington PD's second objection challenges Special Master Clark's finding that Worthington PD received either 60 or 80 letters contemporaneously with the creation of the incident report. Worthington PD states:

> Worthington Police created the Incident Report on September 25, 2017. (WP000614). However, the letters were not received by the Worthington Police until October 6, 2017 and were not placed in the investigative file until October 8, 2017. (WP000615; WP000619; WP000627; WP000091). The initial incident report as taken on September 25, 2017 did not reference receipt of the letters. (WP000627) ("PROPERTY" field is empty). On or about October 8, 2017, the reference to the letters was added to the Incident Report. (WP000615 *compare* WP000627; WP000091). Accordingly, the Special Master made an error of law and fact by

determining that the letters were delivered contemporaneously with the creation of the Incident Report. *Report,* pg. 8. Therefore, the second objection should be sustained and the Report and Recommendation should be modified to exclude the letters referenced, the Incident Report. *State ex rei. Beacon Journal Publ'g Co. v. Maurer,* 2001-Ohio-282, 91 Ohio St. 3d 54, 54, 741 N.E.2d 511, 512.

(Footnote omitted.) (Objections, 9.)

{¶13} In response, Colahan maintains that Special Master Clark "fairly and equitably balanced the strong public interest in the release of public records against Worthington's interest in its law enforcement investigatory file." (Response, 1-2.) Colahan asserts that Worthington PD's argument that the letters were not delivered contemporaneously with the incident reports constitutes a "a 180-degree reversal" from the position taken by Worthington PD when Worthington PD filed a motion to dismiss in this case. (Response, 2.) Colahan states: "Worthington cites to page numbers in the file in support of its arguments. Of course, Requester has no way of rebutting this argument because he has never seen the pages cited by Worthington. But more importantly, Worthington could have made this argument to the Special Master. Worthington had access to the file at all times and could have informed the Special Master that the letters were not submitted with the Incident Report. Worthington did not make this argument. The argument is waived." (Response, 2.) And Colahan states: "The Court should not consider Worthington's argument that the letters were not submitted contemporaneously with the Incident Report since Worthington told the Special Master the exact opposite." (Response, 2.)

{¶14} Colahan's contention that Worthington PD "waived" its argument that the letters were not delivered contemporaneously with the incident reports and his urging that this court should not consider Worthington PD's argument are not persuasive. It is true that Worthington PD did state in its motion to dismiss: "The incident report was submitted with approximately 80 letters, the contents and frequency of which were said to have cause the alleged victim and his family mental anguish." (Memorandum In

Support of Motion To Dismiss, 1.)    And, based on this representation, Special Master Clark reasonably could conclude that the letters were filed contemporaneously with the incident report.

{¶15} Nonetheless, R.C. 2743.75(F)(2) expressly permits a party to object to a special master's report and recommendation.  *See* R.C. 2743.75(F)(2).  In this instance, in accordance with R.C. 2743.75(F)(2), Worthington PD has filed a written objection that specifically challenges Special Master Clark's conclusion that "[c]ontemporaneous with the creation of the incident report, the victim delivered a FedEx envelope to Worthington PD containing either 60 or 80 letters."    Under  R.C. 2743.75(F)(2), Worthington PD properly may raise an objection to Special Master Clark's conclusion in the report and recommendation.

{¶16} Based on the court's review, the court finds that Worthington PD's challenge to the special master's conclusion is supported by the record. But even though Worthington PD's second objection has merit, it does not necessarily follow that the disputed letters should not be produced, as Worthington PD maintains.

{¶17} Worthington PD asserts that "the letters referenced in the incident report are unquestionably evidence, and they have significant investigative value. (WP000615; WP000627). * * * The letters demonstrate the alleged crime of menacing by stalking.  (WP000615; WP 000627). * * * The letters would obviously serve as evidence at trial if the suspect is prosecuted, just like a video of post-*Miranda* questioning.  *Ohio Dep't of Pub. Safety*, 2016-Ohio-7987, ¶ 46."  (Objections, 6-7.)

{¶18} In the report and recommendation, Special Master Clark found that "the referenced letters constitute part of the initial incident report." (Report and Recommendation, 8.)  In support of this finding, Special Master Clark cites to *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54, 56, 741 N.E.2d 511 (2001).  In *Maurer* at 56, the Ohio Supreme Court "[held] that [the incident] report, including the typed narrative statements, is not a confidential law enforcement

investigatory record but is a public record, and that its custodian, Maurer, must release an unredacted copy immediately upon request." *Maurer*, however, is factually distinguishable from this case. In *Maurer*, the typed narrative statements were attached to an incident report. *Maurer*, 54. But here the record before the court supports the notion that the disputed letters were placed in the investigative file almost two weeks after an incident report was created. Thus, the special master's reliance on *Maurer* is misplaced to support his finding that "the referenced letters constitute part of the initial incident report."

{¶19} What the disputed letters may constitute therefore requires examination. Worthington PD maintains that the disputed letters are "unquestionably evidence." But, in the court's view, the disputed letters also may be "specific investigatory work product" under R.C. 149.43(A)(2)(c) (establishing that "specific investigatory work product" falls within the confidential law enforcement investigatory records [CLEIRs] exception). If the disputed letters are confidential law enforcement investigatory records, then, as a matter of law, the disputed letters are not public records for purposes of R.C. 149.43. *See* R.C. 149.43(A)(1) (providing that, as used in R.C. 149.43, a "public record" "does not mean * * * (h) Confidential law enforcement investigatory records").

{¶20} Pursuant to R.C. 149.43(A)(2), the term "confidential law enforcement investigatory record"

> means any record that pertains to a law enforcement matter of a *criminal*, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create *a high probability of disclosure of any of the following*:
>
> (a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;
>
> (b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;

(c) Specific confidential investigatory techniques or procedures or *specific investigatory work product*;

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

(Emphasis added.)

{¶21} In *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258 (a case in which the Cincinnati Enquirer sought disclosure of recordings from cameras mounted on the dashboards of two Ohio State Highway Patrol cars), the Ohio Supreme Court discussed the concept of "specific investigatory work product," stating that

> a record that merely pertains to a law-enforcement matter does not constitute a confidential law-enforcement investigatory record unless the release of the record would create a high probability of disclosure of specific investigatory work product. Our review of the recordings at issue here leads us to conclude that a 90-second portion of the recordings contains specific investigatory work product, but the remainder does not.

> R.C. 149.43 does not define "specific investigatory work product." In *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), we applied the principles of attorney work product and concluded that the investigative work-product exception in R.C. 149.43(A)(2)(c) protects "'any notes, working papers, memoranda or similar materials, prepared by * * * [here, by law enforcement officials] in anticipation of litigation.'" (Brackets sic.) *Id.* at 434, quoting *Black's Law Dictionary* 1606 (6th Ed.1990). Stated another way, unless Crim.R. 16 requires disclosure, "information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation." *Steckman* at 435.

> The protection for work product emanates from a concern that investigators and prosecutors should be free to gather, assemble, and prepare case information and theories "'without undue and needless interference.'" *Id.* at 434, quoting *Hickman v. Taylor*, 329 U.S.495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Since *Steckman*, we have clarified that the investigative-work-product rule is a "very narrow exception[ ] to R.C. 149.43" that "applies to actual pending or highly probable criminal

prosecutions." (Emphasis deleted.) *State ex rel. Police Officers for Equal Rights v. Lashutka*, 72 Ohio St.3d 185, 188, 1995 Ohio 19, 648 N.E.2d 808 (1995).

*State ex rel. Cincinnati Enquirer* at ¶ 40-42. In *State ex rel. Cincinnati Enquirer*, at ¶ 46, the Ohio Supreme Court further stated:

Based on our review of the recordings, we conclude that about 90 seconds of [Trooper] Harvey's recording—when Harvey takes Teofilo to her patrol car, reads him his Miranda rights, and questions him—could have been withheld as investigative work product compiled in anticipation of litigation. Harvey conducted her questioning of Teofilo inside the patrol car, away from public view. And by informing Teofilo of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Harvey intended to secure admissible statements for the prosecution's later use at trial. This 90-second portion, therefore, could have been withheld.

{¶22}  Thus, in *State ex rel. Cincinnati Enquirer* at ¶ 46, the Ohio Supreme Court determined that the securing of admissible statements, i.e., evidence, by an agent of a law enforcement agency for the prosecution's later use at trial constituted specific investigatory work product that properly could be withheld.  Here, the disputed letters constitute specific investigatory work product because it is evidence secured by a law enforcement agency for the prosecution's use at a highly probable criminal prosecution. Worthington PD should be free to gather, assemble, and prepare case information and theories without undue and needless interference.  Moreover, even though no criminal prosecution may have yet been commenced against the identified suspect, such a lack of enforcement does not mean that the CLEIRs exception does not apply.  As Special Master Clark notes in the report and recommendation: "There is no express time limit to the CLEIRs exception in the statute.  R.C. 149.43(A)(2).  Law enforcement investigatory work product records 'continue to be exempt despite the passage of time, [or] the lack of enforcement action, * * *' (Citations omitted.) *State ex rel. National Broadcasting Co. v. Cleveland ('NBC II')*, 57 Ohio St.3d 77, 75-80, 566 N.E.2d 146 (1991) * * * "  (Report and Recommendation, 9.)

{¶23} The court rejects Special Master Clark's finding that Colahan "has established by clear and convincing evidence that [Worthington PD] violated R.C. 149.43(B) * * * by withholding other records in the investigatory file to which no exception applies." (Report and Recommendation, 13-14.) The court determines that Worthington PD's first and second objections should be sustained.

{¶24} Worthington PD's third objection asks the court to determine whether Special Master Clark erred, as a matter of law, by failing to apply constitutional protections to alleged victims and alleged witnesses who may be identified by the letters. In response, Colahan asserts that Worthington PD has "waived" this argument relative to a constitutional right to privacy. (Response, 3.) And Colahan notes that Worthington PD did not comply with an order issued by Special Master Clark that required Worthington PD to identify portions of the records that it asserted was subject to this exception. Colahan states that "it is unclear whether Worthington is referring to letters attached to the Incident Report, or letters elsewhere in the file that the Special Master found subject to the CLEIRs exception." (Response, 3.)

{¶25} A review of Special Master Clark's report and recommendation discloses that Special Master Clark did not rule on Worthington PD's claim that the release of unspecified portions of the withheld records would violate the victims' and witnesses' constitutional right to privacy. (Report and Recommendation, 13.) Notably, the Ohio Supreme Court has stated that "Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary." *Hall China Co. v. Pub. Util. Com.*, 50 Ohio St.2d 206, 210, 364 N.E.2d 852 (1977). Because the court has concluded that the disputed letters constitute specific investigatory work product under R.C. 149.43(A)(2)(c), the court need not address Worthington PD's claim in its third objection that Special Master Clark erred, as a matter of law, by failing to apply constitutional protections to alleged victims and alleged witnesses who may be identified by the letters. *See In re Wells*, 1st Dist. Hamilton No. C-080131, 2008-Ohio-

6688, ¶ 9 ("Since we have held that the hearsay rule prohibited the introduction of the value evidence, we reiterate the long-standing principle that a court will not determine a constitutional claim that is not essential to the disposition of a particular controversy" (footnote omitted)).

### III.    Conclusion

{¶26} For reasons set forth above, the court holds that Worthington PD's first and second objections to Special Master Jeffery W. Clark's report and recommendation of October 2, 2018 should be sustained. The court makes no ruling relative to Worthington PD's third objection to Special Master Clark's report and recommendation of October 2, 2018. The court further holds that Special Master Clark's report and recommendation of October 2, 2018 should be adopted in part, rejected in part, and modified in part. The court also holds that Special Master Clark's report and recommendation of October 2, 2018, as modified, should be adopted.


PATRICK M. MCGRATH
Judge

[Cite as *Colahan v. Worthington Police Dept.*, 2018-Ohio-4594.]

| STEPHEN T. COLAHAN | Case No. 2018-00928PQ |
| --- | --- |
| Requester | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| WORTHINGTON POLICE DEPARTMENT | |
| Respondent | |

{¶27} For the reasons set forth in the decision filed concurrently herewith, and upon independent review of the objected matters, the court SUSTAINS respondent's first and second objections to Special Master Clark's report and recommendation of October 2, 2018. The court does not enter a ruling relative to respondent's third objection to Special Master Clark's report and recommendation of October 2, 2018.

{¶28} The court adopts in part, rejects in part, and modifies in part Special Master Clark's report and recommendation of October 2, 2018. The court adopts, as modified, Special Master Clark's report and recommendation of October 2, 2018. Judgment is rendered in part in favor of requester and in part in favor of respondent. Court costs are assessed equally against requester and respondent. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

Filed October 30, 2018
Sent to S.C. Reporter 11/14/18