[Cite as *Northwest Ohio Innocence Clinic v. Lucas Cty. Prosecutor's Office*, 2026-Ohio-918.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| NORTHWEST OHIO INNOCENCE CLINIC (NWOIC)<br><br>    Requester<br><br>    v.<br><br>LUCAS COUNTY PROSECUTOR'S OFFICE<br><br>    Respondent | Case No. 2025-00973PQ<br><br>Special Master Sarah Pierce<br><br><u>REPORT AND RECOMMENDATION</u> |

{¶1} This matter is before me for a report and recommendation. R.C.2743.75(F). I recommend that the court (1) order respondent to answer the requester's October 6, 2025, requests, as described in this report and recommendation, (2) order respondent to release certain records filed under seal, as described in this report and recommendation, (3) order respondent to reimburse requester's filing fee, and (4) order respondent to bear the balance of costs in this case.

### I.    Background

{¶2} Requester Northwest Ohio Innocence Clinic (the Clinic) seeks records regarding two criminal cases: "the 1981 murder case against Danny Brown" and "the 1981 rape case against Randolph Lee McCoy." *Complaint, filed Nov. 26, 2025*, p. 1.

#### A.  The Brown public records request

{¶3} On October 9, 2024, the Clinic made its first request related to the Brown case. In an email to Respondent the Lucas County Prosecutor's Office, the Clinic requested "the prosecutor's file for Danny Brown [in] Lower Court # 1981-7048." *Compl.*, p. 1, 4.

{¶4} On February 13, 2025, the Clinic modified its request to ask for more specific records. *Compl.*, p. 1. The Clinic requested reports noted in a 2016 "list which was an exhibit provided by LCPO in their motion to quash." *Compl.*, p. 5. The requested reports were authored by investigator Tom Ross regarding:

- An "interview" of "J.R. (10/20/2008)."
- A "phone conversation on April 12, 2001 with J.R."
- An "interview of Betsy Jackson and Brenda Jackson on May 15, 2001."
- An "interview of Lewis Jackson on February 5, 2001."
- An "interview of Calvin Dale Brown on March 12, 2009."
- An "interview of Randolph Lee McCoy on May 14, 2001."

*Compl.*, p. 7. The Clinic also requested "copies of any interviews . . . concerning a 2003 BCI partial DNA hit from the key[.]" *Compl.*, p. 5.

{¶5} On October 6, 2025, the Clinic again modified its request for Brown records. In a letter to the Prosecutor, the Clinic requested three categories of records. First, the Clinic requested any "investigative reports produced by Tom Ross concerning his follow-up to a DNA match of a key[.]" *Compl.*, p. 9. Second, the Clinic requested "all interviews by Tom Ross that were subjected to an in-camera review on 1/13/2017." *Compl.*, p. 9. These interviews included "an audio interview of Jeffrey Russell on 4/12/2001" and investigation reports regarding:

- "an interview with Betsy & Brenda Jackson on May 15, 2001;"
- "buccal swabs from Danny Brown and Sherman Preston on June 6, 2003;"
- "an interview with Lewis Junior Jackson on February 5, 2001;"
- "an interview with Calvin Dale Brown on March 12, 2009;" and
- "an interview with Randolph Lee McCoy on May 14, 2001."

*Compl.*, p. 11. Finally, the Clinic requested "any reports generated by any federal agencies." *Compl.*, p. 11.

{¶6} On November 6, 2025, the Prosecutor notified the Clinic that "[n]o audio/video interviews" were located. *Compl.*, p. 29. The Prosecutor also withheld responsive reports as "confidential law enforcement investigatory records." *Compl.*, p. 29.

**B. The McCoy public records request**

{¶7} On October 6, 2025, the Clinic requested from the Prosecutor the "prosecutor file for Case # CR81-6493A (Randolph Lee McCoy)." *Compl.*, p. 9.

{¶8} On November 6, 2025, the Prosecutor provided responsive records but withheld some files as "trial preparation records." *Compl.*, p. 29.

### C. Procedural history

{¶9} Mediation was bypassed in this case, and a schedule set for the parties to file evidence and memoranda supporting their positions. That schedule has run its course, making this case ripe for decision. *Order Bypassing Mediation, entered Dec. 8, 2025*.

## II.    Analysis

### A. The Clinic is entitled to relief on its October 6, 2025, Brown request.

{¶10} <u>Operative request.</u> The Clinic began making requests for records related to the Brown case in October 2024. *See Compl.*, p. 1, 4. The Prosecutor has provided inspection access and copies of records in response. *See Resp. Answer, filed Jan. 30, 2026*, ¶ 2-3. The final modification of the Brown case request was made by letter on October 6, 2025. *Compl.*, p. 9-11. A public records request is superseded by a subsequent request that modifies the original request. *Schaffer v. Ohio State Univ.*, 2024-Ohio-2185, ¶ 56, adopted 2024-Ohio-2625 (Ct. of Cl.); *Ryan v. City of Ashtabula*, 2023-Ohio-621, ¶ 12, adopted 2023-Ohio-1487 (Ct. of Cl.); *Little Turtle Civic Assoc. v. City of Columbus*, 2021-Ohio-4439, ¶ 12, adopted 2021-Ohio-4655 (Ct. of Cl.). I therefore consider the October 6, 2025, letter to be the operative Clinic request for records related to the Brown case.

{¶11} <u>Production.</u> A person seeking to compel production of public records through Revised Code 2743.75 must "plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 26.

{¶12} The Prosecutor states that, in its response on November 6, 2025, all responsive records in its possession were either withheld under the CLEIR exception or noted as "not included in [the Prosecutor's] case files." *See Resp. Answer,* ¶ 8.

{¶13} In the Prosecutor's November 6 response, it noted that it did not locate any audio or video interviews in its files. *Compl.*, p. 29. The Prosecutor therefore answered the Clinic that it did not have any records responsive to the request for "an audio interview of Jeffrey Russell on 4/12/2001." *Compl.*, p. 11. In the sealed documents filed by the Prosecutor, included are reports regarding:

- An in-person interview conducted on October 20, 2008;

- A phone interview conducted on April 12, 2001;

- An in-person interview conducted on May 15, 2001;

- Buccal swabs taken on March 16, 2000, and April 10, 2001, report dated June 6, 2003;

- An in-person interview conducted on February 5, 2001;

- An in-person interview conducted on March 12, 2009; and

- An in-person interview conducted on May 14, 2001.

*See Resp. Notice of Withheld Records Index, filed Jan. 21, 2026*.

{¶14} This leaves, unanswered, the Clinic's request for "investigative reports produced by Tom Ross concerning his follow-up to a DNA match of a key" and "any reports generated by any federal agencies." *Compl.*, p. 9, 11. The Clinic has pled that it did not receive these records. The Prosecutor has provided no evidence or argument regarding its non-response to these requests. The Clinic is therefore entitled to an answer from the Prosecutor these requests.

{¶15} <u>CLEIR exception.</u> If records are withheld from release based on a public records exception, the public office must "prove facts clearly establishing the applicability of the exception." *Welsh-Huggins*, 2020-Ohio-5371, ¶ 27. The public office "does not meet [its] burden if it has not proven that the requested records fall squarely within the exception," and courts "resolve any doubt in favor of disclosure." (Cleaned up.) *Id*. at ¶ 27. The public office must produce extrinsic evidence if the applicability of the exception is "not obviously apparent and manifest just from the content of the record itself[.]" *Id*. at ¶ 35. "Unsupported conclusory statements in an affidavit are insufficient." *Id*. at ¶ 35.

{¶16} The Prosecutor generally asserts that the withheld records are subject to the CLEIR exception at R.C. 149.43(A)(2). *See Resp. Index, filed Jan. 21, 2026*, p. 1. In support of this exception, the Prosecutor filed the withheld records under seal and submitted two affidavits. *Id*.; *see also Resp. Notice of Filing Ev., filed Jan. 21, 2026*. The affidavits state generally that the records at issue were withheld "due to the criminal murder case of B.R. being an active, ongoing matter." *Resp. Notice of Filing Evidence*, p. 3 ¶ 5 (Borrell Affidavit).

{¶17} The Prosecutor does not specify which CLEIR exception it relies on. *See* R.C. 149.43(A)(1)(h) and (A)(2). The CLEIR exception applies "only to the extent" that a

"record would create a high probability of disclosure" of five types of information. *Id*.; *see also Kearns v. Boardman Twp. Police Dept.*, 2025-Ohio-475, ¶ 24, adopted 2025-Ohio-736 (Ct. of Cl.) (requiring public office to specify CLEIR exception). Because no evidence is presented regarding uncharged suspects, confidential sources, specific confidential investigatory techniques, or threats to life, I conclude that the Prosecutor invokes the more general CLEIR work product exception. R.C. 149.43(A)(2)(a)(iii) and (A)(2)(b).

{¶18} The CLEIR exception for "specific investigatory work product" protects from disclosure of "information assembled by law enforcement officials in connection with a probable or pending criminal proceeding." *State ex rel. Caster v. Columbus*, 2016-Ohio-8394, ¶ 19 (citation omitted); *accord State ex rel. Myers v. Meyers*, 2022-Ohio-1915, ¶ 33 n.1; *Colahan v. Worthington Police Dept.*, 2018-Ohio-4594, ¶ 21-22 (Ct. of Cl.). This exception does not include routine offense and incident reports. *Myers* at ¶ 33. This CLEIR exception expires at the end of a criminal appeal or when an investigation has been closed. *Id.* at ¶ 32; *see also* R.C. 149.43(A)(2)(b).

{¶19} In support of this exception, the Prosecutor submits an affidavit with the conclusory statement that the records were "deemed withheld due to the criminal murder case of B.R. being an active, ongoing matter." *Resp. Notice of Filing Evidence*, p. 3 ¶ 5 (Borrell Affidavit). From the face of the withheld records, I note that each report is labelled with some version of "Bobbie Russell Homicide/Aggravated Murder" or "State v. Danny Brown."

{¶20} I also take judicial notice of the following information regarding the prosecution of Danny Brown for the murder of Bobbie Russell. *Gold v. Bertram*, 2023-Ohio-4567, ¶ 17-18 (4th Dist.). In 1982, Brown was convicted of aggravated murder and sentenced to life in prison. *Brown v. State*, 2025-Ohio-998, ¶ 3 (6th Dist.). In 2000, based on new DNA testing, Brown was granted a new trial. *Id*. In response, the state dismissed the original indictment and, in 2001, Brown was released from prison. *Id*.

{¶21} In the years following, Brown filed several civil cases to establish his status as a "wrongfully imprisoned individual" and receive statutory compensation. In his most recent case, filed in 2023, the Sixth District Court of Appeals noted that "[Brown and the State] do not dispute that Brown . . . was convicted of a felony, sentenced for that conviction, and the conviction was vacated." *Brown v. State*, 2025-Ohio-998, ¶ 28 (6th

Dist.). However, the Sixth District held that the "actual innocence" component of Brown's wrongful imprisonment claim had already been adversely decided in his first wrongful imprisonment case. *Id*. In that first case, the wrongful imprisonment statute required a showing that, among other things, "no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney . . . against the individual for any act associated with the underlying conviction[.]" *Id*. at ¶ 3. The Sixth District affirmed summary judgment for the State, noting that "the state presented evidence that Brown was still a suspect in the victim's murder and that Brown had failed to counter the state's evidence that he committed the murder with Civ.R. 56 evidence of his innocence." *Id*. This finding in Brown's first case barred his claims in his two subsequent wrongful imprisonment cases. *Id*. at ¶ 28.

{¶22} Based on the record before me, I cannot conclude that the Prosecutor has carried its burden to prove that the withheld records fall squarely within the CLEIR work product exception. Brown was convicted of Bobbie Russell's murder in 1982, but the indictment was dismissed in 2001. In or around 2003, the state presented evidence that Brown remained a suspect in the murder. On their face, it appears that the withheld reports were compiled in support of the investigation of Bobbie Russell's murder. Therefore, the reports *might* have been compiled for a "probable or pending criminal or civil proceeding"—the reports were compiled after Brown's murder indictment was dismissed and near in time to his wrongful imprisonment proceedings.

{¶23} The CLEIR work product exception expires, however, at the end of the direct appeal period or when "each agency, office, or official responsible for the matter has made a decision not to proceed with the matter." R.C. 149.43(A)(2)(b). The direct appeals in Brown's wrongful imprisonment cases have all concluded. The original criminal case against Brown has concluded. The Prosecutor has not submitted sufficient evidence to demonstrate that the officials responsible for the investigation and prosecution of Bobbie Russell's homicide are proceeding with the matter. *See Welsh-Huggins*, 2020-Ohio-5371, ¶ 50-55 (conclusory affidavit statements not sufficient). And any doubt in a public records case is resolved in favor of disclosure. *See id*. at ¶ 10.  I therefore recommend that the court find the Prosecutor has not demonstrated the applicability of the CLEIR work product exception and order disclosure of the withheld records.

{¶24} The Clinic points to a decision issued by a judge in one of Brown's wrongful imprisonment cases. *See Req. Ev., filed Dec. 22, 2025*, p. 38-39. In that 2017 decision, the judge determines that several investigative reports written by investigator Tom Ross are not subject to the law enforcement investigatory privilege. The Clinic argues that this determination decides that public records status of the reports for this case. *Id*., p. 40.

{¶25} I disagree. The CLEIR public records exception and the law enforcement investigatory privilege are distinct legal concepts, although they use similar terms and arise from similar public interests. The law enforcement investigatory privilege is a qualified evidentiary privilege that protects certain information from disclosure in legal proceedings. *See J&C Marketing, L.L.C. v. McGinty*, 2015-Ohio-1310, ¶ 17-19. The CLEIR exception is a statutory protection for certain public records from public release. R.C. 149.43(A)(1)(h). The Supreme Court of Ohio has used the privilege to inform resolution of public records cases, but it does not *apply* the privilege to decide public records disputes. *See, e.g., State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 2016-Ohio-7987, ¶ 43-45. In this case, a judge's prior determination that the law enforcement investigatory privilege did not protect records in a legal proceeding does not decide this public records issue.

{¶26} <u>Summary.</u> In conclusion, I recommend that the court find that the Clinic is entitled to relief on its October 6, 2025, public records request for records related to the Brown case. I recommend that the court order the Prosecutor to answer the Clinic's request for "investigative reports produced by Tom Ross concerning his follow-up to a DNA match of a key" and "any reports generated by any federal agencies." I also recommend that the court order the release of the withheld records designated LCPO 002 through LCPO 016 in the records filed under seal.

**B. The Clinic is not entitled to relief on the McCoy request.**

{¶27} The Prosecutor has introduced evidence to demonstrate that its entire file on the McCoy case has been provided to the Clinic. *Resp. Notice of Filing Evidence*, p. 6 ¶ 9 (Albring Affidavit); *see also Compl*., p. 29. The three pages withheld from the Clinic as grand jury records were provided under seal for the court's review. *See Resp. Notice of Withheld Records Index, filed Jan. 21, 2026.* The Clinic does not argue that additional responsive records exist. *See State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-

Ohio-4715, ¶ 13. The Clinic is therefore not entitled to further production regarding this request.

{¶28} The Prosecutor does argue that three responsive records were withheld pursuant to Criminal Rule 6(E). As noted above, the Prosecutor bears the burden of proving that the requested records fall squarely within the claimed exception. *Welsh-Huggins*, 2020-Ohio-5371, ¶ 27.

{¶29} "Crim.R. 6(E) provides an exception to the broad disclosure rights of R.C. 149.43 for matters occurring before the grand jury[.]" *State ex rel. Parisi v. Heck*, 2013-Ohio-4948, ¶ 5 (2nd Dist.) (internal quotation omitted). "This exception is deeply rooted in public policy demanding that the secrecy attendant to grand jury proceedings must be preserved" which "is not eliminated when an investigation has ended." (Cleaned up.) *Id.*

{¶30} The Prosecutor provides an affidavit to support that the withheld pages are grand jury records. *Resp. Notice of Filing Evidence*, p. 4 ¶ 7 (Borrell Affidavit). I have also reviewed the withheld records, which were provided to the court under seal. Those records consist of three pages of handwritten notes. The author of the notes is not apparent from the face of the records. The content of the notes describes testimony provided by the victim of a sexual assault. This comports with the description of the case provided by the Clinic. *See Compl.*, p. 2. There is no mention in the records of the incarceration status of the alleged perpetrator. Based on the Prosecutor's evidence, the description of the case provided by the Clinic, and the content of the records themselves, I conclude that the withheld records are notes of grand jury proceedings.

{¶31} I therefore recommend that the court find that the Clinic is not entitled to relief on the McCoy request.

### C. Costs.

{¶32} Revised Code 2743.75(F)(3)(b) provides that the Court shall award a requester their filing fee and "any other costs associated with the action" if it finds a violation of the Public Records Act. Because I find a violation of the Public Records Act, I recommend that the court order the Prosecutor to reimburse the Clinic's filing fee and bear the balance of costs in this case.

### III.    Conclusion

{¶33} Based on the above considerations, I recommend that the court:

1)      Order respondent to answer the requester's October 6, 2025, requests for "investigative reports produced by Tom Ross concerning his follow-up to a DNA match of a key" and "any reports generated by any federal agencies;"

2)      Order the release of the records filed under seal by respondent and marked as LCPO 002 through LCPO 016;

3)      Order respondent to reimburse requester's filing fee; and

4)      Order respondent to bear the balance of costs in this case.

{¶34} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation.  Any objection shall be specific and state with particularity all grounds for the objection.  A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

SARAH PIERCE
Special Master

**Filed February 26, 2026**
**Sent to S.C. Reporter 3/19/26**